**David L. DeWHITT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 49A02–0406–CR–540.**

Court of Appeals of Indiana.

June 29, 2005.

Rehearing Denied Aug. 15, 2005.

Frederick Vaiana, Voyles Zahn Paul Hogan & Merriman, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, David L. DeWhitt was convicted of one count of Criminal Recklessness as a Class D felony.[1] Upon appeal, DeWhitt presents four issues for our review, which we restate as:

I. Whether the evidence is sufficient to support DeWhitt's conviction;

II. Whether the trial court erred in denying DeWhitt's motion for judgment on the evidence;

III. Whether DeWhitt was denied the effective assistance of trial counsel; and

IV. Whether the trial court violated the *Blakely* rule in sentencing DeWhitt.

We affirm the conviction, but remand for sentence modification.

The facts most favorable to the jury's verdict reveal that on March 3, 2003, DeWhitt drove his Ford Expedition to work at Fort Benjamin Harrison in Indianapolis. DeWhitt parked his vehicle in the employee parking lot, but because there was snow and ice on the lot, he claimed it was diffi-

---

1. Ind.Code § 35–42–2–2 (Burns Code Ed. Repl.2004).

cult to see the parking spaces. DeWhitt parked his vehicle next to another parked vehicle and went to work. Later that morning, Ginger Miller, an employee of Lawrence Towing, got a call from police at Fort Harrison that some vehicles were improperly parked and needed to be towed away. Miller dispatched a tow-truck driver who returned with DeWhitt's Ford.

When DeWhitt went back to the lot to look for his vehicle, he discovered that his vehicle was missing and eventually learned that it had been towed away. DeWhitt then placed a call to Lawrence Towing and told Miller that he wanted his car brought back to the Fort. Miller told DeWhitt that if they brought the vehicle back for De-Whitt that he would be charged an additional towing fee. DeWhitt hung up the phone.

DeWhitt had someone drop him off at Lawrence Towing approximately one hour later. DeWhitt did not enter the office but instead went straight to the impound lot. Two employees of Lawrence Towing, Walter Taylor and James Eads, went outside to the lot to talk to DeWhitt. They told DeWhitt that he needed to pay for the towing and complete some paperwork before he could reclaim his vehicle. DeWhitt refused to comply.[2] DeWhitt entered his vehicle and began to drive out of the lot without paying. Ms. Miller later testified that she heard a car door shut, the engine start, and tires spinning. Eads shut the lot gate, but before he could get the gate completely shut, DeWhitt hit it. DeWhitt drove through the gate and struck Eads in his right leg above the knee with the bumper of the truck. DeWhitt quickly exited the lot. Miller telephoned the police, and Eads was later taken to the hospital.

As a result of this incident, on March 6, 2003, the State charged DeWhitt as follows:

"David L DeWhitt, on or about March 3, 2003, while armed with a deadly weapon, that is: a motor vehicle, specifically, a Ford Expedition SUV, recklessly performed an act that created a substantial risk of bodily injury to James Eads, that is: drove said vehicle at James Eads as he attempted to close security gates, striking James Eads in the leg with the vehicle." App. at 26.

Upon the conclusion of the State's case-in-chief in the jury trial held on February 18, 2004, DeWhitt moved for a judgment of acquittal. The trial court denied the motion. After both sides had rested, De-Whitt "renewed" his motion "in the form of a motion to dismiss the information ...." Tr. at 256. The trial court denied this motion also. The jury found DeWhitt guilty as charged. Following a sentencing hearing held on May 20, 2004, the trial court sentenced DeWhitt to three years; one year executed and served upon in-home detention, and two years suspended and served on probation. The trial court also imposed a $10,000 fine. DeWhitt filed a notice of appeal on June 18, 2004.

## I

### Sufficiency of the Evidence

DeWhitt claims that the evidence cannot support his conviction. Specifically, he claims that the victim, Eads, created the substantial risk of bodily injury. Upon review of challenges to the sufficiency of the evidence, we neither reweigh evidence nor reassess the credibility of witnesses. *Kien v. State*, 782 N.E.2d 398, 407 (Ind.Ct. App.2003), *trans. denied.* Instead, considering only the evidence which supports the

---

2. Taylor testified that DeWhitt stated that he would not pay "a damn thing." Tr. at 147. Eads testified that DeWhitt stated that he would not pay "no f-ing bill." Tr. at 161.

jury's verdict and any reasonable inferences which the jury may have drawn therefrom, we will affirm the conviction if there is substantial evidence of probative value from which the jury could reasonably conclude that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.*

DeWhitt was charged pursuant to Indiana Code § 35–42–2–2, which provides in relevant part:

> "(b) A person who recklessly, knowingly, or intentionally performs:
>
>> (1) an act that creates a substantial risk of bodily injury to another person . . .
>
> * * *
>
> commits criminal recklessness. Except as provided in subsection (c), criminal recklessness is a Class B misdemeanor. (c) The offense of criminal recklessness as defined in subsection (b) is:
>
>> (1) a Class A misdemeanor if the conduct includes the use of a vehicle;
>>
>> (2) a Class D felony if it is committed while armed with a deadly weapon; or
>>
>> (3) a Class C felony if it is committed by shooting a firearm from a vehicle into an inhabited dwelling or other building or place where people are likely to gather." [3]

According to DeWhitt, while he drove his vehicle at a low rate of speed Eads came out of the office and attempted to close the gate to the impound lot. "It is only at this point that DeWhitt hits the gate notwithstanding the fact that he tried to swerve to avoid colliding with it." Appellant's Br. at 7. DeWhitt argues that had Eads remained in the office and not tried to stop him from leaving the lot, despite DeWhitt's refusal to pay the towing fee, no substantial risk of bodily injury would have occurred. We cannot agree with this reasoning. First, DeWhitt asks us to look at facts which are not favorable to the verdict. The facts favoring the verdict reveal that DeWhitt refused to pay the towing fees, ignored the warnings of the employees not to leave, and rammed the gate when they tried to prevent him from leaving. Miller testified that she heard tires squealing and the engine "revving." Tr. at 123. As DeWhitt rammed the gate, going "pretty fast," he struck Eads in the leg. Tr. at 167. The jury could reasonably conclude from this evidence that it was DeWhitt, not Eads, who created the substantial risk of bodily injury necessary to sustain the criminal recklessness conviction.

DeWhitt's references to *Micinski v. State,* 487 N.E.2d 150 (Ind.1986), and *Abney v. State,* 766 N.E.2d 1175 (Ind.2002), are unavailing. In the former case, defendant Micinski was charged with, among other things, two counts of driving under the influence causing bodily injury. Micinski had been drinking "more than he should have" and decided nevertheless to drive his car home. 487 N.E.2d at 151. As he was driving he struck two students who were walking along the road, seriously injuring them. Upon appeal, one of the issues presented by Micinski was that the evidence was insufficient to support his convictions for driving under the influence causing bodily injury in that there was no proof that his intoxication directly and proximately caused the injuries to the students. The controlling statute at that time provided that it was a Class D felony for a person to operate a motor vehicle while

---

**3.** Although DeWhitt's conduct involved use of a vehicle and therefore might have been charged under subsection 2(c)(1), the actual charge was under subsection (c)(2) involving the vehicle as a deadly weapon. *See* Part III *infra.*

intoxicated if the offense "results in serious bodily injury ... other than death, to another person." *Id.* at 153 (citing Ind. Code § 9–4–1–54(b)(2) (1981)).

Upon transfer, our Supreme Court held that the statute did not require that the driver's intoxication be what caused the defendant to hit the victim. *Id.* at 154. Instead, the court stated:

> "The statute creates a crime—driving while intoxicated—and adds higher penalties if the commission of this offense results in serious injury or the death of another person. *There is, of course, a need to show causation; in the typical case a showing that the driver ran into the victim would suffice.* We find nothing in the statute to indicate that the General Assembly intended to require that the State prove a causal link between the driver's intoxication and the fact that the injury resulted from his driving." *Id.* (emphasis supplied).

The court then noted, "This is not to say that a drunk driver who hits a child who has run out from between two parked cars is not entitled to ask a jury to find him not guilty because there is a reasonable doubt whether he caused the collision." *Id.* Moreover, the court stated that the analysis of the statute should focus on the driver's acts and not on speculation as to whether he could have stopped it had he been sober. *Id.* Thus, the statute had two elements: (1) that the defendant was driving while intoxicated; and (2) that his act of doing so resulted in serious bodily injury to another person. *Id.* The court reasoned that the jury, having heard the circumstantial evidence regarding the accident, could have reasonably concluded that Micinski had driven under the influence and that he caused an accident in which there was bodily injury. *Id.* Therefore, the court affirmed Micinski's convictions on these counts. *Id.*

In *Abney,* the defendant had been drinking at a tavern, and as he drove home, he hit a bicyclist who died at the scene. Despite having a shattered windshield, a deployed airbag, and a caved-in roof, Abney continued to drive home. When eventually stopped by police, Abney admitted to having hit something but claimed not to know what it was. He was charged with operating a motor vehicle while intoxicated causing death, operating a vehicle with a .10% or more blood alcohol content causing death, and leaving the scene of an accident resulting in death. The focus at trial was on whether Abney caused the death of the cyclist, with Abney contending that it was possible that another vehicle had hit the cyclist first. Abney therefore tendered a jury instruction which stated that if the jury found that Abney's conduct caused the accident that produced the death, then the State had proved the element of causation, but that if someone else's conduct caused the accident, the jury should find Abney not guilty. *Id.* at 1176. The trial court refused this instruction and instead instructed the jury that to prove the offense of operating while intoxicated causing death, the State was required to prove the element of causation, and that in determining whether Abney had caused the death of the victim, the jury should focus on Abney's driving conduct, not speculation on whether he could have avoided the accident had he been sober. *Id.* The jury was further instructed, "If you find that the Defendant's driving conduct was a contributing cause to the accident that produced the death of the victim, the State has proven the element of 'causation.'" *Id.* The jury found Abney guilty as charged, and upon appeal Abney claimed that the trial court erred in instructing the jury that the State needed to prove only that Abney was a "contributing cause" rather than a " 'substantial,' 'proximate,' or 'legal' cause." *Id.*

Upon transfer, our Supreme Court stated that the analysis in *Micinski* was a short-handed way of stating the well-settled rule that the State must prove that the defendant's conduct was a proximate cause of the victim's injury or death. *Id.* at 1177–78. The court rejected the lesser standard of "contributing cause," noting that if such were sufficient to satisfy the element of causation, then the driver in the hypothetical posed in *Micinski* involving the darting child could have been convicted. *Id.* at 1178. The *Abney* court held that the trial court erred in refusing Abney's tendered instruction and in instructing the jury that the "lesser standard of contributing cause" was sufficient. *Id.* Further concluding that such error prejudiced Abney, the court reversed his convictions. *Id.*

■ In the present case, DeWhitt claims that Eads was in the position of the "darting child" in the hypothetical given in *Micinski* and mentioned in *Abney,* and that he should not be held responsible for Eads's actions. We disagree. Eads was not the "darting child" who, through no fault of the hypothetical drunk driver, darts from between two parked cars. Instead, Eads was simply reacting to DeWhitt's actions of trying to remove his vehicle from the lot without completing the necessary paperwork and paying the towing fee. There was sufficient evidence from which the jury could conclude that DeWhitt, not Eads, created a substantial risk of bodily injury to another.

Moreover, we note a further distinction between the present case and *Micinski* and *Abney.* In those cases, the statutes required that the defendant's conduct either "result" in serious bodily injury to another or "cause" the death of another. Here, the criminal recklessness statute does not require that the defendant "cause" any injury; rather the crime is committed if the defendant recklessly, knowingly, or intentionally performs an act that *creates* a substantial *risk* of bodily injury to another. I.C. § 35–42–2–2(b)(1). Thus, the question is did DeWhitt create a substantial risk of bodily injury not whether he "caused" anything. Nevertheless, even if we were to agree with DeWhitt's claim that "cause" and "create" mean the same thing, the jury could reasonably conclude that DeWhitt's actions of driving his vehicle through a gate in an attempt to flee created or "caused" such a risk. In summary, the evidence is sufficient to support DeWhitt's conviction.

II

*Judgment on the Evidence*

DeWhitt complains that the trial court erred in denying what he now refers to as motions for a directed verdict, also known as a judgment on the evidence. *See* Ind. Trial Rule 50. At the close of the State's evidence, DeWhitt moved for a "judgment of acquittal," which the trial court denied. Later, at the close of all the evidence, DeWhitt "renewed" this motion "in the form of a motion to dismiss" the charging information, using the same logic argued for the motion for judgment of acquittal. Tr. at 256. DeWhitt now claims that we should consider both of these motions as motions for a directed verdict as described in Trial Rule 50. That Rule states in part:

> "**Judgment on the Evidence—How Raised—Effect.** Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict...." T.R. 50(A).

A motion for judgment on the evidence is also referred to in the caption of the Rule as a "directed verdict." It may be presented at various stages in the proceedings, including: after another party carrying the burden of proof or of going forward with the evidence upon any one or more issues has completed presentation of his evidence thereon, after all the parties have completed presentation of the evidence upon any one or more issues, or after all the evidence in the case has been presented and before judgment. T.R. 50(A)(1)-(3).

In addition to a motion for judgment on the evidence pursuant to T.R. 50, a motion to dismiss a charging information may be made pursuant to Indiana Code § 35-34-1-4(a) (Burns Code Ed. Repl.1998).[4] Such a motion must generally be made no later than twenty days prior to the omnibus date if the defendant is charged with a felony. I.C. § 35-34-1-4(b)(1).

■ Here, although DeWhitt moved to dismiss the information, he was clearly beyond the time limit in which to do so. DeWhitt's reasoning for "dismissing" the information was identical to his earlier motion for judgment on the evidence. However, to the extent that DeWhitt challenges the trial court's denial of his motion at the close of the State's evidence, there is case law precedent stating that such

alleged error is waived if the defendant proceeds to present evidence on his own behalf. *See Lowery v. State*, 547 N.E.2d 1046, 1051 (Ind.1989); *Russell v. State*, 438 N.E.2d 741, 743 (Ind.1982); *Love v. State*, 272 Ind. 672, 677, 400 N.E.2d 1371, 1374 (1980); *Lacey v. State*, 670 N.E.2d 1299, 1304 (Ind.Ct.App.1996); *Snow v. State*, 560 N.E.2d 69, 74 (Ind.Ct.App.1990).

■ In this regard it is well settled that a judgment on the evidence is properly granted only where there is a total absence of evidence as to the guilt of the accused or where the evidence is without conflict and susceptible to only one inference and that inference is in favor of the defendant. *Lovell v. State*, 813 N.E.2d 393 (Ind.Ct.App.2004), *trans. denied.* Conversely, it would seem to be a truism that where the party with the burden of proof wholly fails to sustain that burden in its case-in-chief, it is error for the trial court to deny a T.R. 50 motion. *See Wellington Green Homeowners' Ass'n. v. Parsons*, 768 N.E.2d 923 (Ind.Ct.App.2002), *trans. denied.* It would thus seem to follow that a defendant need not sit silently and risk a jury conviction in such circumstance but should be permitted to present a defense without waiving a valid argument that he was entitled to a judgment on the evidence when he made his motion at the conclusion of the State's case. *See Barnes v. Barnes,*

---

4. This statute provides in relevant part:
"The court may, upon motion of the defendant, dismiss the indictment or information upon any of the following grounds:
(1) The indictment or information, or any count thereof, is defective under section 6 of this chapter.
(2) Misjoinder of offenses or parties defendant, or duplicity of allegation in counts.
(3) The grand jury proceeding was defective.
(4) The indictment or information does not state the offense with sufficient certainty.
(5) The facts stated do not constitute an offense.

(6) The defendant has immunity with respect to the offense charged.
(7) The prosecution is barred by reason of a previous prosecution.
(8) The prosecution is untimely brought.
(9) The defendant has been denied the right to a speedy trial.
(10) There exists some jurisdictional impediment to conviction of the defendant for the offense charged.
(11) Any other ground that is a basis for dismissal as a matter of law." *Id.*

603 N.E.2d 1337 (Ind.1992) (citing *Thomas v. Thomas*, 577 N.E.2d 216 (Ind.1991)).[5] An erroneous denial of a motion for judgment on the evidence would appear to be just as erroneous at the conclusion of the trial as it was when the motion was overruled.

■■ Be that as it may, and notwithstanding these procedural difficulties, the gist of DeWhitt's argument, however presented, is that he could not be convicted of the Class D felony criminal recklessness because the criminal recklessness statute contains a more specific sub-category of the crime when a vehicle is used. *See* I.C. § 35–42–2–2(c)(1) (criminal recklessness elevated to Class A misdemeanor when vehicle is used). DeWhitt claims that this subsection of the statute is more specific and controls over the subsection under which he was convicted, I.C. § 35–42–2–2(c)(2) which defines criminal recklessness as a Class D felony when committed while armed with a deadly weapon. DeWhitt therefore argues that the more specific subsection of the statute should control, and that the trial court should have removed the charge of criminal recklessness as a Class D felony from the jury's consideration. We therefore treat DeWhitt's argument as one of insufficient evidence to support his conviction as a Class D felony. *See Snow*, 560 N.E.2d at 74 (treating a claim regarding a directed verdict as one of sufficiency of the evidence where the claim was waived by the defendant electing to present evidence after the denial of

his motion made at the close of the State's evidence).

■■ The statute is clear—if one commits criminal recklessness, without more, it is a Class C misdemeanor. I.C. § 35–42–2–2(b). If the reckless conduct includes the use of a vehicle, the crime is elevated to a Class A misdemeanor. I.C. § 35–42–2–2(c)(1). If the crime is committed while the defendant was armed with a deadly weapon, it is elevated to a Class D felony. I.C. § 35–42–2–2(c)(2). The specific issue before us arises when the deadly weapon involved happens to be a vehicle. An automobile may be considered a "deadly weapon" given appropriate circumstances. *See Johnson v. State*, 455 N.E.2d 932, 936 (Ind.1983) (agreeing with concession that an automobile can be a deadly weapon if used or intended to be used in a manner readily capable of causing serious bodily harm even though it is not particularly defined as a deadly weapon in the criminal code); *Solomon v. State*, 570 N.E.2d 1293, 1295 (Ind.Ct.App.1991) (automobile can be a deadly weapon); *see also* Ind.Code § 35–41–1–8 (Burns Code Ed. Repl.2004) (defining "deadly weapon" to include equipment or other material that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury).[6]

We do not view the statute as containing two mutually exclusive subsections. That a vehicle *may* be considered a deadly weapon implies the corollary that not all vehicles are necessarily deadly weapons.

---

**5.** The *Barnes* opinion was superceded in part on other grounds as recognized in *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 457 (Ind.2001).

**6.** We note that DeWhitt does not directly argue that the Ford Expedition he was driving was used is such a manner as to preclude its consideration as a "deadly weapon." Even if he did argue such, we would not agree. De-

Whitt's acts of ramming a large vehicle into a gate at a considerable rate of speed and striking another in the leg could reasonably be said to be using the vehicle in a manner readily capable of causing serious bodily harm. *Cf. Solomon*, 570 N.E.2d at 1295–96 (vehicle twice driven at police officer properly considered to be a deadly weapon).

If criminal recklessness is committed and includes the use of a vehicle, whether the vehicle is considered a deadly weapon or not, the requirements of subsection 2(c)(1) are met. If, as here, criminal recklessness is committed and the defendant is "armed" with a vehicle used in such a manner as to be considered a deadly weapon, then the requirements of subsection 2(c)(2) are also met. In such a case, subsection 2(c)(1) would be a factually-included offense of subsection 2(c)(2). We do not discern from the statute that the General Assembly intended to elevate the crime of criminal recklessness to a Class D felony if the defendant is armed with a deadly weapon, but that if deadly weapon happens to be a vehicle, the crime may only be elevated to a Class A misdemeanor. Thus, the trial court did not err in denying DeWhitt's motions because, given the evidence favoring the conviction, he could properly have been convicted of criminal recklessness as a Class D felony.

## III

### Effective Assistance of Counsel

 DeWhitt next contends that he was denied the effective assistance of trial counsel.[7] To prevail upon a claim of ineffective assistance of counsel, DeWhitt must show that his trial counsel's representation was both deficient, in that it fell below an objective standard of reasonableness, and that he was prejudiced by such deficiency so that he was denied a fair trial. See O'Connor v. State, 796 N.E.2d 1230, 1235 (Ind.Ct.App.2003). To overcome the presumption that his trial counsel's represen-

tation was appropriate, DeWhitt must present strong and convincing evidence. Id. To establish prejudice, DeWhitt must demonstrate that there is a reasonable probability that, but for his counsel's performance, the result of the proceeding would have been different. Id. If it is easier to dispose of an ineffectiveness claim upon the ground of lack of sufficient prejudice, that course may be followed. Id. In the present case, DeWhitt attacks his trial counsel's performance in several respects.

### A. Failure to File Motion to Dismiss

First of these attacks is DeWhitt's claim that his trial counsel should have filed a motion to dismiss the charges based upon his argument that he could not have been convicted of a Class D felony because of the use of the vehicle. As we have already rejected this argument, it cannot support a claim of ineffective assistance. See Sparks v. State, 499 N.E.2d 738, 742 (Ind.1986) (where motion to dismiss would have been unsuccessful, defendant did not establish prejudice by counsel's failure to seek dismissal); King v. State, 642 N.E.2d 1389, 1392 (Ind.Ct.App.1994) (where defendant made no showing that a motion for involuntary dismissal would have been successful, there was no prejudice).

### B. Failure to Tender Jury Instruction on Causation

 DeWhitt next challenges his trial counsel's failure to tender a jury instruction on causation. Specifically, based upon

---

7. We note that a post-conviction hearing is normally the preferred forum to adjudicate a claim of ineffective assistance of counsel. McIntire v. State, 717 N.E.2d 96, 101 (Ind. 1999); Woods v. State, 701 N.E.2d 1208, 1219 (Ind.1998), cert. denied 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999). This is so because presenting such a claim often re-

quires the development of new facts not present in the trial record. McIntire, 717 N.E.2d at 101. Although a defendant may choose to raise a claim of ineffectiveness of counsel on direct appeal, if he does so the issue will be foreclosed from collateral review. Id. at 102; Woods, 701 N.E.2d at 1220.

his argument involving *Micinski* and *Abney, supra,* DeWhitt argues that causation is an element of the crime charged against him and that had his counsel tendered an instruction regarding causation, the jury could have found that Eads, not DeWhitt, was responsible for the incident. We reject this argument upon grounds similar to those discussed earlier. The statutory language does not require that the State prove that DeWhitt caused anything to happen. It instead requires the State to prove that DeWhitt recklessly performed an act that *created* a substantial *risk* of bodily injury to another. I.C. § 35–42–2–2(b). Moreover to the extent that DeWhitt claims that "create" and "cause" mean the same thing, we note that the jury was instructed that to convict DeWhitt, the State was required to prove that DeWhitt "recklessly ... performed an act that created a substantial risk of bodily injury to James Eads ...." Preliminary Instruction 6a; Final Instruction 15. The jury was not given the option of convicting DeWhitt if it was Eads who created the substantial risk of bodily injury. Because the jury was properly instructed, DeWhitt's counsel was not ineffective for failing to tender an instruction regarding causation.

### C. Failure to Tender Jury Instruction on Included Offense

 DeWhitt also claims that his counsel was ineffective for failing to tender an instruction on the factually-included offense of the Class A misdemeanor of criminal recklessness involving the use of a vehicle. While we agree with DeWhitt that the Class A misdemeanor of criminal recklessness involving the use of a vehicle is in this case a factually-included offense of Class D felony criminal recklessness while armed with a deadly weapon, i.e. the vehicle, this does not end the discussion. DeWhitt must still establish that his trial

counsel's performance fell below an objective standard of reasonableness, and that counsel made errors so serious that he was not functioning as "counsel" as guaranteed by the Sixth Amendment. *See O'Connor,* 796 N.E.2d at 1235; *State v. Holmes,* 728 N.E.2d 164, 172 (Ind.2000). We will afford counsel considerable discretion in choosing strategy and tactics, and we will accord that decision deference. *Holmes,* 728 N.E.2d at 172. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* Even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* Furthermore, isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

 Here, it could well be that DeWhitt's trial counsel felt that the State had not proved that DeWhitt had committed criminal recklessness while armed with a deadly weapon and decided to not give the jury the opportunity to convict him of the factually included Class A misdemeanor offense. In other words, counsel could well have decided to go for an "all or nothing" strategy in the expectation that the jury would acquit DeWhitt of the Class D felony charge. We will not judge counsel's performance as ineffective simply because, in hindsight, it was not successful. *See Perez v. State,* 728 N.E.2d 234, 236 (Ind.Ct.App.2000); *Payne v. State,* 658 N.E.2d 635, 642 (Ind.Ct.App.1995), *trans. denied.* DeWhitt has not established that his trial counsel's performance was deficient.

### IV

#### Propriety of Sentence and Fine

DeWhitt claims that the trial court violated the rule espoused in *Blakely v.*

*Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) in imposing his sentence and fine. In *Blakely,* the United States Supreme Court applied the rule from the earlier case of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), wherein the Court had stated, " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.' " *Blakely,* 124 S.Ct. at 2536 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348). The *Blakely* Court, relying upon *Apprendi,* held that the Washington sentencing scheme at issue violated the petitioner's Sixth Amendment right to a trial by jury. 124 S.Ct. at 2543. For our purposes, the crucial portion of *Blakely* is that in which the Court explained what constituted the "statutory maximum" sentence for purposes of the *Apprendi* rule. The *Blakely* Court stated that prior case law made clear that the " 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 2537 (emphasis in original). The Court then clarified that for *Apprendi* purposes:

> "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' . . . and the judge exceeds his proper authority." *Id.* (citations omitted).

The State, as it has consistently done, contends that DeWhitt waived any claim by failing to object at the trial court and that Indiana's sentencing scheme does not implicate the *Blakely* rule. The Indiana Supreme Court recently rejected both of these contentions in *Smylie v. State,* 823 N.E.2d 679 (Ind.2005).

Here, DeWhitt was convicted of a Class D felony. The statute provides that a person convicted of a Class D felony "shall be imprisoned for a fixed term of one and one-half (1½) years, with not more than one and one-half (1½) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances. In addition, he may be fined not more than ten thousand dollars ($10,000)." Ind.Code § 35–50–2–7(a) (Burns Code Ed. Repl.2004). The trial court found one aggravating circumstance, the fact that DeWhitt has a prior criminal history. Concluding that this factor outweighed the mitigating circumstance that incarceration would cause a "great hardship" on DeWhitt's family, the trial court imposed a sentence of three years, with one year executed and served on in-home detention, and two years suspended and served on probation.

DeWhitt admits that an aggravating factor relied upon by the trial court was proper under the *Blakely* analysis. *See Blakely,* 124 S.Ct. at 2536; *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 (both excepting the fact of a prior conviction from the general rule that facts which increase the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt).

■ We note that DeWhitt's "criminal history" includes a 1999 conviction for Battery as a Class D felony, for which he was sentenced as a misdemeanant. However, the trial court also made reference to two prior arrests for combative incidents involving vehicles and somewhat violent conduct. The mere facts of an arrest and that charges were filed are, without a subsequent conviction, violative of *Blakely. Dil-*

*lard v. State,* 827 N.E.2d 570 (Ind.Ct.App. 2005). For this reason we are unable to conclude that as a matter of law, the trial court by referencing only the 1999 battery conviction would have imposed the same maximum sentence for the Class D felony. Accordingly, we hereby order the trial court to modify the sentence to the presumptive term of one and one-half years.

 DeWhitt complains of the trial court's use of facts not found by the jury in imposing a $10,000 fine. Although nothing in the *Blakely* opinion specifically references fines, the *Blakely* rule does not specifically limit itself to the length of incarceration. Instead, it refers to "penalties" being increased beyond the statutory maximum. A fine imposed as a criminal sanction is no doubt a "penalty" for purposes of the *Blakely* rule. However, we need not resolve that question, because even if we were to assume that a fine was a penalty for *Blakely* purposes, the fine imposed by the trial court did not exceed the "statutory maximum" as defined in *Blakely.* As stated, *Blakely* defined the relevant "statutory maximum" as the maximum sentence a judge may impose without any additional findings. 124 S.Ct. at 2537. The relevant sentencing statute here provides that a person convicted of a Class D felony "may be fined not more than ten thousand dollars ($10,000)." Unlike an enhanced sentence, there is no requirement that a fine be supported by aggravating factors. Thus, the "statutory maximum" fine for *Blakely* purposes is truly the statutory maximum fine of $10,000.

 DeWhitt also complains that the trial court made additional "findings" when he pronounced the sentence, such as stating that there was a "strong possibility" that DeWhitt needed mental health services and that DeWhitt had failed to recognize that he had any problem. Sentencing Tr. at 40. We observe, however, that these comments by the trial court were made *after* the trial court had found a valid aggravating factor and mitigating factors and pronounced the sentence. The trial court's comments appear to be related to the trial court's decision regarding how DeWhitt's sentence should be served, i.e. on in-home detention and probation, and the conditions thereof. They were not used by the trial court to justify DeWhitt's sentence.

The judgment of the trial court is affirmed as is the imposition of the $10,000 fine, but the cause is remanded to modify the sentence to the presumptive term of one and one-half years.

RILEY, J., and NAJAM, J., concur.