Billy J. LEMOND, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 63A04–0702–CR–105.

Court of Appeals of Indiana.

Dec. 21, 2007.

Transfer Denied Feb. 28, 2008.

386

Terry A. White, Olsen, White & Hambidge, LLP Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Billy J. Lemond appeals his convictions of and sentences for attempted murder, a Class A felony,[1] and criminal recklessness, a Class D felony.[2] We affirm.

## FACTS AND PROCEDURAL HISTORY

In the fall of 2005, Lemond's ex-wife, Rhonda Mattingly, sought a protective order for herself and their daughter, A.N.L. Lemond did not want A.N.L.'s name to appear on the protective order because he wanted to be able to exercise his visitation rights. On September 6, 2005, Lemond, Mattingly, and A.N.L. attended a hearing concerning the protective order. After the hearing, Mattingly and A.N.L. waited in the hallway while the court finished some paperwork. They were laughing about something when Lemond walked past them and said, "[Y]ou may be laughing now but tomorrow, it's going to be a really rough day." (Tr. at 231.)

The next day, Lemond was to appear in the Dubois Circuit Court to face an intimidation charge Mattingly initiated. Mattingly and A.N.L. planned to attend the hearing. As they were driving along the Winslow–Cato Road toward Jasper, Lemond stepped out of the woods on the right side of the road. He fired two shots, which went through the windshield and caused Mattingly to swerve off the road. After quickly checking to see where Lemond was, Mattingly sped away, and Lemond fired some additional shots. Mattingly stopped at the nearest gas station and called 911. Neither she nor A.N.L. had been shot, but A.N.L. had some cuts from the glass.

Both Mattingly and A.N.L. identified Lemond as the shooter. Lemond was arrested and charged with attempted murder of Mattingly, attempted murder of A.N.L., and criminal recklessness with a deadly weapon.

Through taped phone conversations Lemond made from the jail, it was discovered that Lemond's brother-in-law, Kenneth Myers, had found the gun Lemond used. Jeremy Arnold, who was engaged to Myers' daughter, disposed of the gun in a river. Myers and Arnold were given immunity in exchange for their cooperation in finding the gun and testifying at trial. The gun was never found, but excerpts from the tape were played at the trial.

Lemond testified he did not intend to kill Mattingly or A.N.L., but wanted to scare Mattingly so she would drop the intimidation charge and stop permitting

---

1. Ind.Code § 35–41–5–1 (attempt); I.C. § 35–42–1–1 (murder).

2. I.C. § 35–42–2–2.

A.N.L. to date an older man. He testified he was aiming for the radiator, but his hand jerked upwards when he fired the gun.

The jury found Lemond guilty of attempted murder of Mattingly and criminal recklessness. Lemond was sentenced to forty-five years for attempted murder and two and-a-half years for criminal recklessness, to be served concurrently.

## DISCUSSION AND DECISION

Lemond raises several issues, which we restate as follows: (1) whether the failure to give instructions on lesser included offenses was fundamental error; (2) whether the jury verdicts were inconsistent; (3) whether the trial court abused its discretion by disallowing questions submitted by the jury; (4) whether counsel was ineffective; (5) whether the trial judge was biased; and (6) whether his sentence is inappropriate.

### 1. *Lesser Included Offenses*

■ Lemond asserts the jury should have been instructed on battery with a deadly weapon and criminal recklessness as lesser included offenses of attempted murder. Lemond acknowledges counsel did not submit instructions on these offenses. *See Ortiz v. State*, 766 N.E.2d 370, 375 (Ind.2002) ("When the asserted error is failure to give an instruction, ... [f]ailure to tender an instruction results in waiver of the issue for review."). Therefore, he argues the lack of instruction was fundamental error.

The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal. In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial.

*Id.* (citations omitted).

■ In deciding whether to give an instruction on lesser included offenses, the trial court should determine if the offense is inherently included in the charged offense. *Wright v. State,* 658 N.E.2d 563, 566 (Ind.1995). If it is not inherently included, the court should determine whether it is factually included. *Id.* at 567. If the offense is either inherently or factually included, the court must give the instruction if there is a serious evidentiary dispute about the elements distinguishing the offenses. *Id.*

■ There was no basis for an instruction on battery with a deadly weapon, which is defined as follows:

(a) A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is:

\*　　\*　　\*　　\*　　\*　　\*

(3) a Class C felony if it ... is committed by means of a deadly weapon[.]

Ind.Code § 35–42–2–1. Lemond's defense was that he never intended to hit Mattingly or A.N.L., but was trying only to scare Mattingly. There was no evidence Lemond tried to hit, but not kill, either Mattingly or A.N.L. Therefore, even assuming this offense is factually included in attempted murder, there was no evidentiary dispute to support an instruction.

■ The jury was instructed on the elements of criminal recklessness. Apparently Lemond believes the jury should have

specifically been told criminal recklessness was a lesser included offense of attempted murder. He argues he was prejudiced in that "the jury was never given the opportunity to determine that [his] acts amounted to something less than the charged crime of attempted murder." (Appellant's Reply Br. at 3.) If the jury believed Lemond's actions constituted some offense of lesser culpability, it had the opportunity to find him not guilty of attempted murder. The jury was properly instructed it must find Lemond not guilty of attempted murder unless the State proved specific intent to kill beyond a reasonable doubt. We presume a properly instructed jury follows those instructions. *Chandler v. State*, 581 N.E.2d 1233, 1237 (Ind.1991). Therefore, failure to give the instructions suggested by Lemond on appeal was not fundamental error.

### 2. *Jury's Verdicts*

▮ Lemond argues the jury's verdicts were inconsistent because it found the same conduct simultaneously intentional and reckless. "When reviewing the consistency of jury verdicts, we will take corrective action only when the verdicts are 'extremely contradictory and irreconcilable.'" *Jones v. State*, 689 N.E.2d 722, 724 (Ind.1997) (citation omitted). The jury verdicts in this case are not irreconcilable. There was evidence Lemond was upset with Mattingly, but had some affection for A.N.L. The jury could logically conclude Lemond had specific intent to kill Mattingly, but not A.N.L. Nevertheless, A.N.L. was sitting next to Mattingly in the car as Lemond was shooting, so the jury could conclude his conduct was reckless toward A.N.L.

### 3. *Jury Questions*

▮ Next, Lemond asserts the trial court should have permitted witnesses to answer certain questions submitted by the jury. In the preliminary instructions, the trial court informed the jurors that if they had questions for a witness, they could submit written questions after the attorneys finished questioning the witness, but before the witness left the stand. *See* Ind. Jury Rule 20 (court shall instruct jurors they may submit written questions); Ind. Evidence Rule 614(d) (providing for questions from jurors). After each witness testified, the court asked the jurors if they had questions.

The jurors had no questions during the presentation of evidence. After the close of the evidence, the bailiff informed the trial court the jurors had submitted two questions. The trial court decided not to permit the questions because the jurors had been instructed to submit them while the witnesses were on the stand. Lemond wished to permit the questions because the witnesses were still available. No offer of proof was made, so the record does not indicate the nature of the jury's questions. It is not clear the trial court or either counsel read the questions. (*See* Tr. at 514–15.)

▮ Whether to propound a juror's question is within the discretion of the trial court. *Dowdy v. State*, 672 N.E.2d 948, 953 (Ind.Ct.App.1996), *trans. denied* 683 N.E.2d 584 (Ind.1997). Accordingly, we review the decision for abuse of discretion. *See Sleck v. State*, 175 Ind.App. 22, 369 N.E.2d 963, 965 (1977).

▮ A trial court has discretion to adopt various procedures for eliciting jury questions. *See Howard v. State*, 818 N.E.2d 469, 479 (Ind.Ct.App.2004), *trans. denied* 831 N.E.2d 735 (Ind.2005). Here, the trial court had instructed the jurors that they could submit written questions after the attorneys finished questioning the witness, but before the witness left the stand. The jurors did not do that, and we

cannot say the trial court abused its discretion by not reopening the case and recalling witnesses to the stand. *Id.*[3]

 Further, this issue has been waived by Lemond's failure to make an offer of proof. "Error may not be predicated upon a ruling which ... excludes evidence unless ... the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked." Evid. R. 103(a).

### 4. *Ineffective Assistance of Counsel*

Lemond claims his counsel was ineffective in that he: (1) did not tender more instructions on lesser included offenses; (2) did not listen to tapes of Lemond's calls from jail or object to their admission based on the constitution or wiretapping laws; (3) did not challenge certain jurors; (4) did not make an offer of proof on the jury's questions; and (5) had a conflict of interest.

 A post-conviction petition is the preferred avenue for raising a claim of ineffective assistance of counsel, because "such a claim often requires the development of new facts not present in the trial record." *DeWhitt v. State,* 829 N.E.2d 1055, 1065 n. 7 (Ind.Ct.App.2005). A defendant may raise a claim of ineffective assistance on direct appeal, but that will foreclose collateral review of the issue. *Id.*

When reviewing a claim of ineffective assistance of counsel, we begin with a strong presumption counsel rendered adequate legal assistance. *Stevens v. State,* 770 N.E.2d 739, 746 (Ind.2002), *cert. denied* 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56 (2003). To rebut this pre-sumption, Lemond must demonstrate two things:

First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001) (citations omitted), *cert. denied* 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002). Counsel's performance is evaluated as a whole. *Woods v. State,* 701 N.E.2d 1208, 1211 (Ind.1998), *cert. denied* 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999).

### a. *Instructions on lesser included offenses*

For the reasons stated in Part 1 of this opinion, Lemond was not prejudiced by counsel's failure to tender additional instructions on lesser included offenses.

### b. *Tapes of phone calls*

During his sentencing hearing, Lemond told the trial court that counsel had not listened to all the tapes of his calls from jail because there were so many of them. He also stated, "And in those tapes, there's evidence that would have uh, some of the things that [the prosecutor] had

---

**3.** In *Vinson v. State,* 735 N.E.2d 828, 836 (Ind.Ct.App.2000), *trans. denied* 741 N.E.2d 1260 (Ind.2000), we held that a trial court may permit a party to re-open its case. Certainly, in all cases, it is within the trial court's discretion whether to do so.

stated in those tapes, there was other tapes in there that would have stated something different." (Tr. at 555.)

Lemond contends his "sworn testimony at the sentencing remains unrefuted and unchallenged." (Appellant's Reply Br. at 4.) On the contrary, the record reflects counsel was familiar with the content of the tapes and objected to several specific statements on the tapes. (Tr. at 387–88.)

When Lemond took the stand, he complained the excerpts played by the State had been taken out of context, and the following exchange occurred:

Q. Mr. Lemond, how [were] the bits of recordings taken out of context?

A. Well like the uh, one that you just played about John talking about a school got locked down [because of the shooting], he made a joke and I laughed.... You're making it sound like I'm ... making fun of the school getting locked down.... But it is very serious and it's [been blown] way out of proportion. And you're trying to make it look like something that happened on that tape ... makes me look like I'm guilty and I, I tried to kill somebody and I didn't.

Q. Well sir you called yourself an attempted killer on that tape, didn't you?

A. We were joking around.... When you're sitting in jail ... it's a very boring place. You know, you do what you can to get through it. And if you can laugh about, you know, something that was said, even though it is very serious, you know, it's better than sitting there and dwelling on it and making it worse.

\* \* \* \* \* \*

Q. Would you agree with me most of us don't go around describing ourselves as attempted killers, do we?

A. Most people's [names have not] been put in the paper as [an] attempted murderer.

(*Id.* at 503–05.) Lemond did not refer to any material from the tapes that might have given the conversation a different context, and he has not directed us to anything from the tapes that would have been helpful to his case.

 Lemond argues counsel should have objected to the admission of the tapes on the ground they violated state and federal wiretapping laws and the 4th Amendment. Federal wiretapping laws exempt law enforcement officers in the execution of their duties. 18 U.S.C. § 2510(5)(a)(ii); *see United States v. Feekes,* 879 F.2d 1562, 1565–66 (7th Cir.1989) (finding no violation of federal wiretapping laws where phone calls from jail were recorded pursuant to prison regulations). Lemond acknowledges there was a sign advising inmates their calls would be recorded. Therefore, he consented to the recording of his calls. *See Packer v. State,* 800 N.E.2d 574, 582 (Ind.Ct.App.2003) (finding calls were consensually recorded where jail handbook informed inmate calls could be recorded), *trans. denied* 812 N.E.2d 795 (Ind.2004). Indiana wiretapping laws do not apply when consent is given. Ind.Code § 35-33.5–1–5; *Packer,* 800 N.E.2d at 582. Nor was there a violation of the Fourth Amendment, as inmates have a reduced expectation of privacy. *See, e.g., Bell v. Wolfish,* 441 U.S. 520, 557, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). As any objection by counsel on these ground would have been overruled, counsel's performance was not deficient.

### c. *Challenges to prospective jurors*

Lemond claims counsel should have challenged two jurors. When the potential jurors were asked whether they had any prior knowledge of the case, Keith Brock stated, "I am a volunteer firefighter. I mean I hear different responses to go.... But that's pretty much about the only

thing I heard on it." (Tr. at 121.) He confirmed that he had only "general information" about the case. (*Id.*) Lemond has not pointed to any evidence Brock could not be impartial or knew anything more about the case than that a shooting had occurred.

■ Lemond also claims counsel should have challenged Stephen Barrett, who served as the alternate. Barrett was a middle school teacher whose school was locked down because of the shooting. (*Id.* at 188.) Even if Barrett should have been challenged, Lemond suffered no prejudice. As the alternate, Barrett was instructed not to participate in deliberations, discussions, or voting.

Counsel questioned the potential jurors about possible sources of bias, including prior information they had about the case, their feelings about guns, their feelings about police officers, their relationships to witnesses or parties, and whether they understood the presumption of innocence and the State's burden of proof. Counsel asked that several jurors be removed for cause. We cannot say counsel's performance during voir dire was deficient.

### d. *Offer of proof on jury questions*

■ Counsel made a record that the witnesses were available to testify, but did not offer to prove the content of the jury's questions. An offer of proof would have been the best practice, as it would provide a clear record for us to review. *See Tyson v. State*, 619 N.E.2d 276, 281 (Ind.Ct.App. 1993) ("An offer of proof provides the appellate court with the scope and effect of the area of inquiry and the proposed answers, in order that it may consider whether the trial court's ruling ... was proper."). However, our rules governing jury questions are relatively new[4] and case law provides little guidance for the trial court and attorneys. We are aware of no decisions dealing with jury questions submitted after the close of all the evidence or whether questions may be refused on purely procedural grounds. In the absence of such guidance, we cannot say counsel's performance was deficient. *See Concepcion v. State*, 796 N.E.2d 1256, 1261 (Ind.Ct.App.2003) (rejecting an ineffective assistance of counsel claim where the state of the law was unclear at time of the alleged deficient performance), *trans. denied* 804 N.E.2d 759 (Ind.2003).

### e. *Conflict of interest*

■ Finally, Lemond asserts counsel had a conflict of interest. Lemond asserted at the sentencing hearing that counsel's firm had represented Mattingly in their divorce. Lemond did not mention the alleged conflict prior to sentencing.

To establish a violation of the Sixth Amendment due to a conflict, a defendant who failed to raise the objection at trial must demonstrate that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance.... An adverse effect on performance caused by counsel's failure to act requires a showing of (1) a plausible strategy or tactic that was not followed but might have been pursued; and (2) an inconsistency between that strategy or tactic and counsel's other loyalties, or that the alternate strategy or tactic was not undertaken due to the conflict.

*Woods*, 701 N.E.2d at 1223 (citations omitted).

Even if counsel had a conflict of interest, Lemond has not demonstrated an adverse impact on counsel's performance. As explained above, most of counsel's alleged

---

4. Ind. Jury Rule 20 went into effect on January 1, 2003.

deficiencies are not supported by the record. Counsel filed motions compelling the State to produce evidence, made motions *in limine*, deposed witnesses, and moved to exclude the tapes. Counsel presented opening and closing arguments, cross-examined witnesses, and made considerable efforts to procure witnesses for the defense. Counsel presented a cogent defense of lack of specific intent to kill, which the jury believed with regard to A.N.L. Counsel's performance, as a whole, was not ineffective.

### 5. *Bias of Trial Judge*

 Lemond argues several facts demonstrate the trial judge was biased. "The law presumes that a judge is unbiased in the matters that come before the judge." *Matter of Edwards*, 694 N.E.2d 701, 711 (Ind.1998). When there is a reasonable question about a judge's impartiality, the judge must recuse himself or herself. Ind. Judicial Conduct Canon 3(E)(1). The test is whether "an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality." *Edwards*, 694 N.E.2d at 710.

Lemond claims the judge was biased because he had children in a school that was locked down because of the shooting. The only evidence on this point is Lemond's bald allegation during the sentencing hearing, which was not based on personal knowledge. (*See* Tr. at 560.)

Lemond also questioned the bonds set for two people who had given depositions for his case. Lemond claims their bonds were set unusually high, and purports to compare their bonds to bonds set in other cases. (*See id.* at 559–60.) However, there is no indication Lemond had personal knowledge of these cases or expertise in the amount of bond typically set for any particular type of case.

Lemond also asserts the trial court consistently overruled his objections and denied his motions. However, Lemond has not identified any erroneous rulings. Accordingly, he has waived this argument.

 Lemond asserts the judge was biased because he imposed a sentence outside the recommendation of the pre-sentence investigation report. However, the judge was not bound by that recommendation. *Jenkins v. State*, 492 N.E.2d 666, 669 (Ind.1986). Sentencing is within the sound discretion of the trial court. *Hall v. State*, 870 N.E.2d 449, 463 (Ind.Ct.App. 2007). Failure to follow recommendations, without more, is not evidence of bias.

Lemond also claims the trial court's consideration of a victim impact statement filed the day of the sentencing hearing demonstrates bias. However, the trial court considered it only for the purpose of restitution. The amount of restitution was supported by a bill for repairs to Mattingly's car. Lemond has not shown he was prejudiced by the use of the impact statement to determine restitution. The evidence fails to show the trial judge was biased.

### 6. *Lemond's Sentence*

 Finally, Lemond claims his forty-five year sentence is inappropriate. We may revise a sentence if it is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). We give deference to the trial court's decision, recognizing the special expertise of the trial court in making sentencing decisions. *Barber v. State*, 863 N.E.2d 1199, 1208 (Ind.Ct.App.2007), *trans. denied* 878 N.E.2d 208 (Ind.2007). Although we conduct an independent review under App. R. 7(B), we "assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial

guide to determining whether the sentence imposed here was inappropriate." *Gibson v. State*, 856 N.E.2d 142, 147 (Ind.Ct.App. 2006). The defendant bears the burden of persuading us the sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind.Ct.App.2007).

Lemond asserts he was trying only to scare Mattingly and was aiming for the radiator, but in finding him guilty of attempted murder, the jury necessarily found he intended to kill her. His argument is an invitation to reweigh the facts found by the jury, which we decline. Lemond also exposed his daughter to needless risk. He has a lengthy criminal history, including twelve misdemeanors and three felonies.[5] In light of the nature of the offense and Lemond's character, we cannot find the sentence inappropriate.

For the forgoing reasons, we affirm the trial court in all respects.

Affirmed.

DARDEN, J., and CRONE, J., concur.

---

5. This information is taken from Lemond's pre-sentence investigation report, which was located in the appendix on white paper. We remind counsel a pre-sentence investigation report should be filed on light green paper and marked "Not for Public Access" or "Confidential." Ind. Appellate Rule 9(J).