STATE of Indiana, Defendant–
Appellant,

v.

Eric D. HOLMES, Plaintiff–Appellee.

No. 49S00–9808–PD–436.

Supreme Court of Indiana.

May 19, 2000.

Jeffrey A. Modisett, Attorney General of Indiana, Michael A. Hurst, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Susan K. Carpenter, Public Defender of Indiana, Steven H. Schutte, Joanna Green, Kathleen Cleary, Linda K. Hughes, Deputy Public Defenders, Indianapolis, Indiana, Attorneys for Appellee/Cross–Appellant.

DICKSON, Justice.

This appeal is from a judgment granting in part and denying in part the post-conviction relief sought by Eric D. Holmes. He was convicted of two counts of murder[1] for the intentional killing of Charles Ervin and Theresa Blosl, one count of attempted murder,[2] one count of robbery,[3] and one count of conspiracy to commit robbery.[4] The jury could not reach a unanimous recommendation for or against the death penalty. After a sentencing hearing, the trial court sentenced the defendant to death for the intentional murder of Theresa Blosl and imposed sentences for terms of years on the other counts. On direct appeal, this Court vacated the defendant's conspiracy conviction and his sentence for class A felony robbery, ordered that a sentence for class C felony robbery instead be imposed, and affirmed the imposition of the death sentence and the other convictions and sentences. *Holmes v. State*, 671 N.E.2d 841 (Ind.1996), *reh'g denied*, (1997), *cert. denied*, 522 U.S. 849, 118 S.Ct. 137, 139 L.Ed.2d 85 (1997). In the subsequent post-conviction proceeding, the post-conviction court partially granted the defendant's petition for post-conviction relief, vacating the death sentence for prosecuto-

---

1. Ind.Code § 35–42–1–1.

2. Ind.Code § 35–41–5–1; Ind.Code § 35–42–1–1.

3. Ind.Code § 35–42–5–1.

4. Ind.Code § 35–41–5–2; Ind.Code § 35–42–5–1.

rial misconduct and ordering a remand to the trial court· for a new penalty phase trial, but otherwise denied his petition. The State appeals from the post-conviction court's partial grant of post-conviction relief, and the defendant cross-appeals from the post-conviction court's partial denial of post-conviction relief. Finding error on an issue of law, we reverse the partial grant of post-conviction relief and hold that the defendant's petition for post-conviction relief should be denied.

### Preliminary Considerations

■■■ Post-conviction proceedings do not afford criminal defendants the opportunity for a "super-appeal."· *Bailey v. State*, 472 N.E.2d 1260, 1263 (Ind.1985); *Langley v. State*, 256 Ind. 199, 210, 267 N.E.2d 538, 544 (1971). Rather, post-conviction proceedings provide defendants the opportunity to raise issues that were not known at the time of the original trial or that were not available on direct appeal. *Lowery v. State*, 640 N.E.2d 1031, 1036 (Ind.1994) ("Post-conviction actions are special, quasi-civil remedies whereby a party can present an error which, for various reasons, was not available or known at the time of the original trial or appeal."), *cert. denied*, 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). Thus, these proceedings do not substitute for direct appeals but provide a narrow remedy for subsequent collateral challenges to convictions. *Weatherford v. State*, 619 N.E.2d 915, 916–17 (Ind.1993). The petitioner for post-conviction relief has the burden of establishing his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5).

■■■ As a general rule, when this Court decides an issue on direct appeal, the doctrine of res judicata applies, thereby precluding its review in post-conviction proceedings. *Lowery*, 640 N.E.2d at 1037. The doctrine of res judicata' prevents the repetitious litigation of that which is essentially the same dispute. *Sweeney v. State*, 704 N.E.2d 86, 94 (Ind.1998); *Wagle v. Henry*, 679 N.E.2d 1002, 1005 (Ind.Ct.App.

1997); *Scott v. Scott*, 668 N.E.2d 691, 699 (Ind.Ct.App.1996). Thus, a petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error. *Maxey v. State*, 596 N.E.2d 908, 911 (Ind.Ct.App.1992). Also, issues that were available, but not presented, on direct appeal are forfeited on post-conviction review. *Spranger v. State*, 650 N.E.2d 1117, 1121 (Ind.1995); *Lowery*, 640 N.E.2d at 1036–37. *But cf. Woods v. State*, 701 N.E.2d 1208 (Ind.1998) (regarding claims of ineffective assistance of trial counsel).

■■■ Indiana Post–Conviction Rule 1(7) authorizes either the defendant-petitioner or the State to take an appeal. The State on appeal claims that the post-conviction court erred in concluding that the defendant established one of his claims sufficiently to be entitled to relief, and, thus, the judgment from which the State appeals is not a negative judgment. When an appeal after a ·non-jury trial does not challenge a negative judgment, the applicable standard is simply that prescribed by Indiana Trial Rule 52(A):

> On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

In reviewing a judgment granting post-conviction relief, our standard of review is governed by Indiana Trial Rule 52(A): " 'We reverse only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that mistake has been made.' " *State v. Van Cleave*, 674 N.E.2d 1293, 1295 (Ind.1996) (quoting *Spranger*, 650 N.E.2d at 1119), *reh'g granted in part*, 681 N.E.2d 181 (Ind.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998). Because this "clearly erroneous" standard is a review for suffi-

ciency of evidence, we neither reweigh the evidence nor determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 158 (Ind.1994); *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994); *Indianapolis Convention & Visitors Ass'n., Inc. v. Indianapolis Newspapers, Inc.,* 577 N.E.2d 208, 211 (Ind.1991). When a "clearly erroneous" judgment results from application of the wrong legal standard to properly found facts, we do not defer to the trial court. *Van Cleave,* 674 N.E.2d at 1296. Also, we are not bound by the trial court's characterization of its results as "findings of fact" or "conclusions of law"; instead, we will look past these labels to the substance of the judgment and review a legal conclusion as such even if the judgment wrongly classifies it as a finding of fact. *Id.* (citing *Indiana State Bd. of Public Welfare v. Tioga Pines Living Ctr., Inc.,* 575 N.E.2d 303, 306 & n. 1 (Ind.Ct.App.1991)).

 The defendant, on the other hand, to the extent that he is appealing from a denial of relief, is appealing from a negative judgment. The standard of review in appeals from post-conviction negative judgments is well established: the defendant must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. *Spranger,* 650 N.E.2d at 1119. The reviewing court accepts the trial court's findings of fact unless "clearly erroneous," T.R. 52(A), but does not defer to the trial court's conclusions of law, *Van Cleave,* 674 N.E.2d at 1295–96. The reviewing court examines only the probative evidence and reasonable inferences that support the post-conviction court's determination and does not reweigh the evidence or judge the credibility of the witnesses. *Butler v. State,* 658 N.E.2d 72, 75 (Ind.1995); *Lowery,* 640 N.E.2d at 1037.

In summarizing the difference between these two standards of review, we have indicated that these standards direct the inquiry of appellate tribunals into trial court decisions: "In one, the inquiry is essentially whether there is *any* way the trial court could have reached its decision. In the other, it is whether there is *no* way the court could have reached its decision." *Spranger,* 650 N.E.2d at 1120.

## A. The State's Appeal

The State challenges the post-conviction court's partial grant of the defendant's petition for post-conviction relief. The State specifically argues that the court committed clear error when it concluded that the prosecutor engaged in a pattern of misconduct that placed the defendant in grave peril and that the defendant's appellate counsel was ineffective for failing to raise a claim regarding the pattern of misconduct. The State grounds its argument primarily on two bases: (1) that the defendant was barred by res judicata from raising a claim of prosecutorial misconduct; and (2) that the defendant was not deprived of the effective assistance of appellate counsel.

The post-conviction court did not apply the doctrine of res judicata. It stated: "This is not the same claim that was made on direct appeal and, therefore, consideration of this claim is not barred by prior adjudication." P.C.R. Record at 1000. The post-conviction court believed that our opinion on direct appeal merely reviewed the alleged acts of misconduct in isolation and that we failed to "set forth an analysis of the totality of the circumstances." P.C.R. Record at 1000. Proceeding to address the claim presented by the defendant, the post-conviction court concluded that a pattern of prosecutorial misconduct existed that culminated in grave peril to the defendant during the penalty phase of the trial.

 Arguing in support of the post-conviction court's conclusion on this issue, the defendant asserts that our review on direct appeal focused on the penalty phase closing argument and argues that the

prosecutorial misconduct, which he contends occurred throughout the entire prosecution of the case, constituted a pattern of misconduct and represented a deliberate attempt improperly to prejudice him. The defendant argues that his appellate counsel did not present to this Court on direct appeal the specific claim that the egregious pattern of prosecutorial misconduct constituted a deliberate attempt to prejudice the defendant.

Upon inspection of the proceedings on direct appeal, we note that the first claim the defendant presented in his appellant's brief was his claim that the trial court erred in denying the defendant's motion to dismiss the death penalty as a result of "intentional, blatant and prejudicial prosecutorial misconduct." P.C.R. Record at 2694. On direct appeal, the defendant challenged the prosecutor's conduct throughout the trial, and his brief focused upon the prosecutor's conduct during the penalty phase. The defendant specifically argued that "[t]he prosecutor committed numerous acts of misconduct throughout the penalty phase" and that this "misconduct placed [the defendant] in such peril that the judge was required to dismiss the State's request for the death penalty." P.C.R. Record at 2694. Quoting the analysis that this Court has applied to claims of prosecutorial misconduct in *Maldonado v. State*, 265 Ind. 492, 355 N.E.2d 843, 848 (1976), the defendant's direct appeal brief continued:

1. The Court first determines that the prosecutor in fact engaged in misconduct. This determination is made by reference to the case law and the disciplinary rules of the Code of Professional Responsibility as adopted in this State. [citation]

2. The Court then considers whether the misconduct, under all circumstances, "placed [the defendant] in a position of grave peril to which he should not have been subjected." [citation] The "grave peril" standard does not require the

Court to find that the misconduct determined the outcome of the trial. [citation]

3. Whether the misconduct results in subjecting the defendant to "grave peril" is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct. [citation]

4. *Even if an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal may still result.* [citation]

P.C.R. Record at 2694–95 (emphasis added). The defendant also argued in his brief on direct appeal:

Clearly, [the defendant] was placed in grave peril by the prosecutor's many acts of misconduct.... Any one of these acts of misconduct was sufficient to place [the defendant] in grave peril. The acts of the prosecutor were blatant, intentional and manifestly improper. Certainly these numerous acts of misconduct *individually and in concert* required that the judge dismiss the death penalty....

P.C.R. Record at 2702 (emphasis added). The defendant summarized his argument on this claim as follows:

The prosecutor committed numerous acts of misconduct including telling the jury that they were not permitted to hear about the victims and showing them inadmissible photographs, telling the jury they should not consider the [defendant's] mitigation evidence and disparaging the [defendant's] defense counsel and witnesses. Although the [defendant] submits that the grave peril standard for prosecutorial misconduct should not be applied in a capital sentencing procedure, the misconduct was such that the [defendant] was placed in grave peril by the prosecutor's many acts of misconduct.

P.C.R. Record at 2688. The defendant's second claim on direct appeal was that the prosecutor presented perjured testimony

or failed to provide requested discovery. The defendant's third claim was that the prosecutor engaged in intentional misconduct by improperly placing excluded victim impact evidence before the jury.

In our opinion on direct appeal, Justice DeBruler, writing for a unanimous court,[5] carefully considered the defendant's claim that the prosecutor engaged in numerous acts of misconduct. *See Holmes*, 671 N.E.2d at 846–49. Our opinion analyzed the conduct of the prosecutor during the jury summation at the penalty phase, the responses of defense counsel, the motions filed by defense counsel, the rulings of and admonishments by the trial court, and the overall character of the jury summation. *Id.* at 846–47. This Court determined that the prosecutor engaged in misconduct in three respects: "(1) disrespect shown the court and its rulings favoring the defense, (2) personal attack upon the integrity of opposing counsel, and (3) attempts to persuade the jury with evidence which had been ruled inadmissible by the trial court, and the mention of which had been expressly forbidden by court order." Id. at 847. The Court determined, however, that "the misconduct did not place [the defendant] and his right to fairness in the jury recommendation process in grave peril." *Id.* The Court also concluded:

> The probable persuasive effect of the misconduct upon the jury deliberations upon its penalty recommendation, in favor of life or in favor of death, under all the circumstances, was minimal. The misconduct did not result in grave peril and the motion for mistrial and the motion to dismiss were properly overruled.

*Id.* The Court also rejected the defendant's claims regarding the State's alleged use of perjured or undisclosed evidence and regarding the placing of victim impact evidence before the jury. *Id.* at 848–49.

**5.** Justice Selby concurred in the majority opinion but wrote a separate concurring opinion addressing an unrelated issue.

**6.** Because we hold that this claim was well-presented and addressed on direct appeal, the

We find that this Court on direct appeal thoroughly considered and decided the defendant's claim of prosecutorial misconduct. The defendant's claim in his post-conviction petition, although recharacterizing some of the issues, was essentially the same dispute as raised on direct appeal. The doctrine of res judicata exists to bring finality to claims that have been considered and decided and to prevent unnecessary protraction of judicial administration. We hold that the doctrine applies here and that the defendant should not have been permitted to relitigate this claim. We hold that the post-conviction court erred as a matter of law in failing to apply res judicata to bar this claim.[6]

### B. The Defendant's Appeal

On cross-appeal, the defendant seeks our review of the following claims: (1) his sentence is unfair and unreliable because of insufficiently developed and unpresented information; (2) the death sentence is not appropriate because of unpresented evidence regarding the defendant's accomplice; (3) the death sentence is unreliable because of serious inaccuracies in the sentencing order; and (4) his trial and resulting sentence are illegal because there were no valid charges against him. We observe that the role of this Court is not to conduct a *de novo* review and adjudicate the merits of these claims but rather to review the judgment of the post-conviction court. We further note that the first three of the above enumerated claims do not constitute independent claims cognizable in post-conviction proceedings. Claims that a sentence is unfair, unreliable, or inappropriate are not, in and of themselves, proper for post-conviction review, but may be presented as argument to support contentions that a defendant was deprived of effective assistance of

claim of ineffective assistance of appellate counsel is wholly without merit and does not supersede the application of the doctrine of res judicata.

counsel. We will consider them in this context and now restate them as the following claims of ineffective assistance of trial counsel: (1) because trial counsel insufficiently developed and presented information, the defendant's sentence is unfair and unreliable; (2) because trial counsel failed to present evidence regarding the defendant's accomplice, the death sentence is not appropriate; and (3) the sentencing order contains inaccuracies that trial counsel could have prevented or corrected.

### 1. Effective Assistance of Counsel

■ A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Williams v. Taylor*, — U.S. —, —, 120 S.Ct. 1495, 1511–12, 146 L.Ed.2d 389, 416–17 (2000). First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. This requires showing that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693, and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment, *id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

■ Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695. Furthermore, isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Bieghler v. State*, 690 N.E.2d 188, 199 (Ind.1997); *Davis v. State*, 598 N.E.2d 1041, 1051 (Ind. 1992); *Ingram v. State*, 508 N.E.2d 805, 808 (Ind.1987). However, in order to make a reasonable tactical decision, counsel must have adequately investigated the client's case because "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

■ The State argues that the defendant's claims of ineffective assistance are barred for failing to raise them on direct appeal. However, this Court has recently clarified the law regarding claims of ineffective assistance of counsel, establishing that a defendant may raise a claim of ineffective assistance of trial counsel for the first time in a post-conviction proceeding. *See Woods*, 701 N.E.2d 1208. In *Woods*, we stated that "a Sixth Amendment claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in post-conviction proceedings." *Id.* at 1220. The defendant did not raise a claim of ineffective assistance of counsel on direct appeal.

#### a. Insufficiently Developed Information

■ The first allegation of ineffective assistance of counsel is that the defen-

dant's trial counsel failed to sufficiently develop and present evidence of his mental illness. He asserted on post-conviction that his trial counsel failed to present evidence that he suffered from impairments that precluded him from planning and carrying out crimes like those for which he was convicted. On post-conviction, the defendant presented the testimony of a licensed psychologist who opined that the defendant was neither psychotic nor retarded; that he suffered from a variety of neuro-cognitive disorders and specifically from a verbal learning disability, a non-verbal visual learning disability, and Attention Deficit Hyperactivity Disorder (ADHD); that he was forlorn and sad, but not a person with active aggression; that he suffered from an extreme mental or emotional disturbance at the time of the offense; and that he did not possess the cognitive apparatus to understand what was occurring and how to interpret it.

The post-conviction court found that evidence of the defendant's mental health was presented to the trial court by several mental health experts who indicated that the defendant was incapable of assessing a situation and acting according to a plan and that this testimony was similar to that presented on post-conviction, providing opinions that the defendant suffered from learning disabilities and mental impairments that precluded him from planning and carrying out the crimes. The substance of the defendant's claim was presented and available for consideration at trial. The post-conviction court determined that counsel did develop and present evidence regarding the defendant's mental ability to plan and carry out this crime. The post-conviction court found that trial counsel's performance was not deficient.[7]

### b. Unpresented Evidence

■ The second allegation of ineffective assistance of counsel is that the defendant's trial counsel failed to present evidence regarding his accomplice.[8] In his petition for post-conviction relief, the defendant argued that a death sentence was inappropriate because his accomplice was more culpable, but received a sentence less than the death sentence. The defendant contended that his trial counsel provided ineffective assistance in failing to present evidence of his accomplice's violent, aggressive nature and criminal history.

In considering the defendant's claim, the post-conviction court found that the accomplice had a violent nature, that the accomplice had a more extensive criminal history than the defendant, and that these facts were available and should have been known by counsel but were not presented at trial. However, the post-conviction court concluded that the accomplice's prior misconduct was not relevant to the circumstances of the crime and the character of this defendant. It also concluded that trial counsel presented essentially all of the same background evidence as was presented on post-conviction review and that

7. The U.S. Supreme Court recently revisited the process for determining whether a defendant has been denied the right to counsel guaranteed by the Sixth Amendment. *Williams*, — U.S. —, 120 S.Ct. 1495, 146 L.Ed.2d 389. In *Williams*, the Court instructed that *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), should not be read to modify the *Strickland* test by requiring "a separate inquiry into fundamental fairness when [the defendant] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding." *Williams*, — U.S. at —, 120 S.Ct. at 1513, 146 L.Ed.2d at 418. The post-conviction court, in reciting the two-pronged standard, cited *Lockhart v. Fretwell*. P.C.R. Record at 959. However, the prejudice prong was not determinative in the post-conviction court's ruling because the court found that trial counsel's performance was not deficient. Because the post-conviction court found no deficient performance, we need not determine whether the court applied the standard in a way contrary to the instruction in *Williams*.

8. Throughout his brief, the defendant refers to Michael Vance as his co-defendant. However, the defendant and Vance were tried separately.

counsel's assistance cannot be faulted as objectively unreasonable for failing to add more of the same. The court found that counsel's performance was not deficient.

### c. Sentencing Order Inaccuracies

The defendant contends that the post-conviction court erred in denying his claim that the death sentence is unreliable because the sentencing order contains inaccuracies that trial counsel could have prevented or corrected.

■ The post-conviction court determined that the defendant's claim was barred by res judicata but nevertheless concluded that the trial evidence adequately supported the sentencing court's conclusions regarding the defendant's motive and opportunity to commit the crimes and his participation in the crimes. To the extent that the defendant's post-conviction claim challenges the content and sufficiency of the trial court's sentencing order, we agree that res judicata is a bar. Our opinion on direct appeal extensively discussed the trial court's sentencing evaluation and order. Among the various aspects addressed were the trial court's finding and weighing of aggravating and mitigating circumstances, its consideration of the defendant's intellectual functioning as a mitigator, its consideration of the sentence received by the accomplice, and the structure of the sentencing statement itself. *Holmes*, 671 N.E.2d at 849–53.

■ Considering the defendant's claim that trial counsel provided ineffective assistance for failing to present a more favorable picture of the defendant's mental capacity, character, and behavior by developing and presenting additional evidence regarding the defendant's family history, educational background, and mental health and abilities, the post-conviction court found that defendant's trial counsel developed and presented evidence regarding the defendant's mental health and his inability to plan and carry out the crimes, including the testimony of several mental health professionals, family members, friends, teachers, a school administrator, and other witnesses. The post-conviction court determined that trial counsel contested the testimony of a key witness and presented essentially all of the same background evidence at trial and sentencing as was presented on post-conviction review. The court concluded that trial counsel did not perform deficiently by not presenting cumulative evidence.

### d. Conclusion Regarding Effective Assistance of Counsel

As noted above, to prevail on his claim of ineffective assistance of trial counsel, the defendant had the burden to prove to the post-conviction court that his counsel's performance was substandard and that the deficient performance prejudiced the defense. As to each of the specified claims of attorney deficiency, the post-conviction court made findings and conclusions contrary to the defendant's claim. In this appeal from the judgment of the post-conviction court denying relief, the defendant has not demonstrated that the evidence as a whole leads unmistakably and unerringly to a conclusion contrary to the decision of the post-conviction court.

### 2. Absence of Charges

In his cross-appeal, the defendant also contends that the post-conviction court erred in denying his claim that his trial, conviction, and sentence were illegal because charges were never properly brought against him. He argues that the 1989 charges that resulted in his trial, conviction, and sentence were dismissed in 1991 and later improperly reinstated without being formally refiled. The post-conviction court found the claim to be without merit.

■ The post-conviction court found that the defendant's trial counsel neither saw nor were served with a motion to dismiss and that, in major felony cases, such motions are usually submitted in writing. The post-conviction court determined that, although the deputy prosecu-

tor at some point wanted to dismiss the charges filed in 1989, they were never dismissed and that the charges filed in the 1992 case were duplicative of the 1989 charges that were still pending before the trial court. The post-conviction court concluded that the defendant failed to show that no valid charges were brought against him.

The defendant derives this claim from a pleading entitled Notice of Refiling filed on August 5, 1992, when the State refiled these criminal charges in cause number 49G05–9208–CF–101477, a separate cause. The Notice of Refiling recited that the cause had been charged in this present proceeding, cause number 49G05–8911–CF–131401, and dismissed on November 16, 1991. The charges refiled in 1992 were dismissed on the State's motion two days later. And, on that same day, the State also filed in the present cause a Motion to Withdraw Motion to Dismiss. The defendant cannot establish either the filing or the granting of any motion to dismiss the present cause, and we find none. Furthermore, the record and filings at and around the time of the purported motion to dismiss and dismissal of charges demonstrate that both the defendant and the State were actively involved in ongoing discovery without any indication that either the parties or the trial court intended or understood that the charges were being dismissed.

The defendant has not demonstrated that the evidence unmistakably and unerringly points to a conclusion contrary to the decision of the post-conviction court.

### Conclusion

We reverse and vacate that portion of the post-conviction court's order setting aside the death sentence and ordering a new penalty phase and sentencing hearing, and we affirm the remaining portion of the order denying relief. The defendant's petition for post-conviction relief is denied.

SHEPARD, C.J., and SULLIVAN and BOEHM, JJ., concur. RUCKER, J., concurs in result.