## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 23 2015, 8:41 am

CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| John Mosley<br>Michigan City, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Angela N. Sanchez<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Mosley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | November 23, 2015<br><br>Court of Appeals Case No.<br>49A02-1409-PC-692<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marc T. Rothenberg, Judge<br><br>The Honorable Amy J. Barbar, Magistrate<br><br>Trial Court Cause No.<br>49G02-9207-CF-92262 |

**Robb, Judge.**

# Case Summary and Issues

[1] John Mosley, *pro se*, appeals the post-conviction court's denial of his petition for post-conviction relief, raising the following issues for our review: (1) whether Mosley received ineffective assistance of trial counsel; and (2) whether Mosley received ineffective assistance of appellate counsel. Concluding the post-conviction court did not err in denying Mosley's petition, we affirm.

# Facts and Procedural History

[2] Many of the facts relevant to Mosley's convictions were recounted by this court on direct appeal:

> On May 27, 1992, R.S. decided to sleep in her car in a parking lot near her second place of employ, a law firm in Indianapolis. During the night R.S. heard a noise at the back of her car, and later saw that a man of medium build, but who looked tall, was tapping at the driver's side window and peering in at her. The man, who was wearing a leather jacket, hooded sweat shirt and a pair of blue jeans told her to open the door and get out of the car. The man showed a large handgun to R.S., pointed it at her, and told her he would shoot her if she didn't get out of the car.
>
> After R.S. opened the door, the man got in the car and took thirteen dollars he found in her purse. He demanded that she exit the car with him stating that he would shoot her if she did not exit the car with him. They exited the car and proceeded to an alley where the man raped R.S. Thereafter, the man told R.S. to get dressed, and he discussed with R.S., while pointing the gun at her, whether she would press charges against him. R.S. walked back to the car when he told her to leave.

R.S. then drove to the law firm, and a security guard called the police. R.S. spoke with the police and was transported to Wishard Hospital where persons there drew blood, took samples, and collected articles of her clothing.

After leaving the hospital, R.S. returned to the law firm. Two days later she gave a statement to Detective Flack of the Indianapolis Police Department. She assisted in making a composite of the perpetrator. After looking at numerous mug shots she was unable to identify the perpetrator from those photographs.

Mosley became a suspect in the case in July of 1992. On July 8, 1992, Detective Flack showed a photo array of six individuals, including Mosley, to R.S. At that time R.S. was able to positively identify Mosley as the perpetrator.

Tests were conducted on the materials and samples collected at Wishard Hospital. Serological analysis determined that the characteristics of the semen found on R.S.'s clothing would match 4.75 per cent, or about one in twenty-one persons, in the black population. DNA tests resulted in a determination that one in twenty-five thousand persons in the black population would have a similar DNA profile.

*Mosley v. State*, No. 49A02-9710-CR-681, slip op. at 2-4 (Ind. Ct. App. Oct. 9, 1998), *trans. denied*.

[3] The State charged Mosley with rape as a Class A felony, robbery as a Class B felony, and criminal confinement as a Class B felony. Following a jury trial in 1994, Mosley was convicted on all counts. Mosley appealed. Finding the trial court erred by giving a supplemental instruction to the jury after deliberations

had commenced, this court reversed and remanded the case for a new trial in *Mosley v. State*, 660 N.E.2d 589 (Ind. Ct. App. 1996).

[4] A second jury trial was held in 1997. The State introduced the composite of the assailant, the photo array from which the victim positively identified Mosley, and the results of the rape kit. A forensic analyst testified that DNA recovered from the victim's clothing and vagina matched Mosley's DNA, and the victim identified Mosley as her assailant in open court. The jury found Mosley guilty as charged. The trial court sentenced Mosley to forty years for rape, twenty years for robbery, and ten years for criminal confinement, to be served consecutively for an aggregate sentence of seventy years executed in the Indiana Department of Correction. Mosley appealed, raising the following issues: (1) whether the trial court improperly admitted identification evidence; (2) whether the State established a sufficient chain of custody for the rape kit; (3) whether the trial court properly instructed the jury on reasonable doubt; and (4) whether a bailiff's *ex parte* communication with the jury constituted reversible error. Finding no error, we affirmed Mosley's convictions in an unpublished memorandum decision, *Mosley*, No. 49A02-9710-CR-681, slip op., and our supreme court denied his petition to transfer.

[5] Thereafter, Mosley filed several petitions for post-conviction relief. He withdrew his first and second petitions, filed in 1999 and 2006 respectively. Mosley, *pro se*, filed a third petition for post-conviction relief in 2010, alleging

ineffective assistance of trial and appellate counsel.[1]  The post-conviction court held a trifurcated hearing on Mosley's third petition, convening in June 2011, June 2013, and September 2013.[2]  On September 3, 2014, the post-conviction court issued written findings of fact and conclusions of law in an order denying Mosley's petition.  Mosley now appeals the denial of his petition for post-conviction relief.  Additional facts will be supplied as necessary.

# Discussion and Decision

## I.  Standard of Review

[6]   "Defendants who have exhausted the direct appeal process may challenge the correctness of their convictions and sentences by filing a post-conviction petition."  *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003).  Post-conviction proceedings do not afford defendants the opportunity for a "super-appeal."  *State v. Holmes*, 728 N.E.2d 164, 168 (Ind. 2000), *cert. denied*, 532 U.S. 1067 (2001).  Instead, they provide a narrow remedy for subsequent collateral challenges to convictions.  *Id.*  The scope of relief is limited to "issues that were not known at the time of the original trial or

---

[1] Mosley requested a public defender, but the State Public Defender's office declined representation.

[2] The post-conviction court bifurcated the hearing in June 2011 to allow subpoenas to be served on Mosley's trial and appellate counsel.  The hearing became trifurcated after trial counsel was unable to attend the hearing in June 2013.

that were not available on direct appeal." *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013) (quotation omitted).

[7] The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who is denied post-conviction relief appeals from a negative judgment, which may be reversed only if "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. In reviewing a denial of post-conviction relief, we neither reweigh the evidence nor reassess the credibility of witnesses. *Holmes*, 728 N.E.2d at 169. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Id.* Finally, we accept the post-conviction court's factual findings unless clearly erroneous, but we do not defer to its legal conclusions. *Stevens*, 770 N.E.2d at 746 (citing Ind. Trial Rule 52(A)).

## II. Ineffective Assistance of Counsel

[8] The Sixth Amendment "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To establish a claim of ineffective assistance of counsel, a defendant must establish (1) counsel's performance was deficient such that it fell below an objective standard of reasonableness based on prevailing professional norms and (2) the defendant was prejudiced by counsel's deficient performance. *Id.* at 687-88.

When considering whether counsel's performance was deficient, we begin with a "strong presumption" that counsel's performance was reasonable. *Id.* at 689. As there are countless ways to provide effective assistance in any given case, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy under the circumstances. *Id.* But an error by counsel, even if professionally unreasonable, does not warrant setting aside a conviction if the error had no effect on the judgment. *Id.* at 691. Accordingly, a defendant is prejudiced by counsel's deficient performance only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Mosley argues the post-conviction court erred in denying his petition alleging ineffective assistance of trial and appellate counsel. Mosley identifies four alleged deficiencies: (1) his trial counsel's failure to subpoena alibi witnesses; (2) his trial counsel's failure to request an admonishment after the State made improper comments during closing argument; (3) his trial counsel's failure to object to consecutive sentences; and (4) his appellate counsel's failure to raise meritorious issues on direct appeal. We will address each allegation in turn.

## A. Trial Counsel's Failure to Subpoena Alibi Witnesses

Mosley argues he received ineffective assistance because his trial counsel failed to subpoena alibi witnesses, particularly James Winfield. Prior to Mosley's first

trial in 1994, counsel filed a timely Notice of Alibi identifying Winfield as an alibi witness, but Winfield did not testify at the 1994 trial. Prior to Mosley's second trial in 1997, counsel spent several months attempting to locate Winfield. Winfield lived in Chicago and did not own a telephone. Counsel sent an investigator from the Marion County Public Defender's office in search of Winfield and also enlisted the help of the Cook County Public Defender's office. After locating and finally speaking with Winfield, counsel filed a Belated Notice of Alibi and an Additional List of Witnesses naming Winfield as well as Brenda Walker and Camille Buffy as potential alibi witnesses. Walker and Buffy are family members of Mosley and also resided in Chicago at that time. The Belated Notice of Alibi stated in relevant part, "[O]n the date and at the time of the alleged offense as charged, Defendant was at his residence living with James Winfield, located at 729 West 71st Street, 2nd floor, Chicago, IL 60621." Record of Proceedings ("R.") at 276.

[12] The State objected to the Belated Notice of Alibi and additional witnesses because the Notice was untimely, the amended witness list was filed after the court's deadline, the witnesses lived out-of-state, and "[t]he defense in the first trial did not present an alibi, so the State [was] not aware of these witnesses or what their testimony would entail." *Id.* at 277.[3] Defense counsel requested a

---

[3] Indiana Code section 35-36-4-1 requires a defendant to inform the trial court in writing of defendant's intention to offer an alibi defense, including "specific information concerning the exact place where the defendant claims to have been on the date stated in the indictment or information." If the defendant is charged with a felony, the Notice of Alibi must be filed no later than twenty days prior to the omnibus date. *Id.* When a defendant fails to file a Notice of Alibi in accordance with Indiana Code section 35-36-4-1, the trial court shall exclude any alibi evidence offered by the defendant. *Lee v. State*, 694 N.E.2d 719, 721 n.4

continuance the week before trial, citing counsel's unavailability on the first day of trial and "difficulty locating potential alibi witnesses." *Id.* at 281. The motion stated "all witnesses have been located," but counsel "need[s] additional time to get travel arrangements made for them." *Id.* The trial court permitted the trial to begin a day later than originally scheduled but otherwise denied the motion to continue.

[13] At a hearing on the day before trial, the trial court heard argument on whether the alibi witnesses should be permitted to testify. At the conclusion of the hearing, the trial court took the matter under advisement. On the morning of trial, the trial court determined while "the defense filed what they called a Belated Notice of Alibi[,] technically, what it should have been is an Amended Notice of Alibi because the Notice of Alibi that was filed in 1993 still stands . . . ." *Id.* at 487. The trial court ruled Winfield, Walker, and Buffy could testify because the amended witness list was filed only three days after the court's deadline and the alleged alibi was "the defendant's only defense." *Id.* at 487-88.

[14] Counsel did not subpoena Winfield, Walker, or Buffy. At the hearing on the day before trial, counsel explained, "[T]hey were family members so I did not subpoena them . . . ." *Id.* at 490. In addition, counsel explained, because the

(Ind. 1998), *cert. denied*, 525 U.S. 1023 (1998). In the present case, Mosley was charged with three felonies, but counsel did not file a Notice of Alibi until April 3, 1997, the day after she first spoke with Winfield. The Notice was filed less than three weeks before trial and roughly ten months after the omnibus date of June 12, 1996.

witnesses resided in Chicago, "the subpoena from Indianapolis is not valid there. . . . [I]t's not the same as going and issuing a subpoena if they lived in Marion County." *Id.* at 491.[4]  When none of the alibi witnesses appeared for trial, counsel made an oral motion to recess or continue: "[I]t appears that all my client's family members, alibi witnesses are not here. . . .  So, I guess I would make, for the record, a motion to recess, continue . . . ." *Id.* at 916-17.[5] The trial court denied the motion.

[15]  Counsel called two witnesses to testify,[6]  and a transcript of Mosley's mother's testimony from the first trial was read into evidence.  Mosley's mother had since died, but she testified in 1994 that she was a resident of Indianapolis, that

---

[4] Indiana Trial Rule 45(E) provides in relevant part,

> A subpoena may be served at any place within the state; and when permitted by the laws of the United States, this or another state or foreign country, the court upon proper application and cause shown may authorize the service of a subpoena outside the state in accordance with and as permitted by such law.

At the time of Mosley's 1997 trial, both Indiana and Illinois had adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.  *See* Ind. Code § 35-37-5-1 to -9; 725 Ill. Comp. Stat. 220/1 to /6.  Indiana Code section 35-37-5-5(a) sets forth the procedure for issuing a subpoena to a witness residing in another state:

> If a person in any state that has made provision for commanding persons within its borders to attend and testify in criminal prosecutions in this state . . . is a material witness in a prosecution pending in a court of record in this state . . . , a judge of the court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. This certificate shall be presented to a judge of a court of record in the county of the state in which the witness is found.

[5] Winfield is not actually Mosley's relative.  Rather, Mosley and Winfield "grew up together as brothers."  Transcript of Post-Conviction Hearing on June 15, 2011 ("2011 PCR Tr.") at 12.  When Winfield was a child, Winfield's mother "had a nervous breakdown and she couldn't take care of [Winfield] . . . ." *Id.* Mosley's mother "adopted" Winfield and raised him as her own child. *Id.*  Winfield recalls he and Mosley shared an apartment in Chicago from 1991 to 1992.

[6] Counsel called an Indianapolis Police Department detective and a forensic scientist employed by the Marion County Forensic Services Agency.

Mosley was living in Chicago in 1992, that Mosley did not visit her in Indianapolis in May 1992, and that Mosley never came to Indianapolis without visiting her. Nonetheless, the jury found Mosley guilty as charged.

[16] Winfield testified at the post-conviction hearing in June 2011. When asked what he remembered about the night of May 27, 1992, Winfield stated,

> We gave a party at my house and I invited friends and everything over. And me, Mr. Mosely [sic], my girlfriend, and all of us; we started out playing cards and then it turned into like a party. So by the time the party was over I think it was roughly around 2:30, 3:00 in the morning. * * * [Mosley] was at my house; as a matter of fact before I went to bed that morning he was already in the bed asleep. . . . [W]hen I went to bed and I check[ed] in on [him], [he] was already in the room and then me and my girlfriend, we went in the bedroom and then we went to sleep.

2011 PCR Tr. at 8-10. Winfield further testified he provided this information to a woman in 1997, but he could not recall the woman's name. The woman asked Winfield to testify to Mosley's whereabouts on the night of May 27, 1992, but Winfield confirmed he never received a subpoena. Winfield offered no explanation for why he failed to appear at Mosley's trial in 1997. Walker and Buffy, Mosley's other alibi witnesses, did not testify at the post-conviction hearing. Counsel testified,

> It's my recollection that I was unable to find [Winfield] in Chicago. [Mosley's] mother had been a contact person that was helping me. . . . [B]etween the first and the second trial she had passed away and so I did not have her help . . . .
> * * *
> [I]f we did the out of state subpoena, which I don't know if we

did, it would be—there's a process to get an out of state witness here. . . . [I]t's my practice that I would only send a subpoena if I had an address and so if I was unable to get an address for [Winfield] than [sic] I would not have sent a subpoena . . . .

Transcript of Post-Conviction Hearing on July 17, 2013, and September 11, 2013 at 53, 56.

[17] The post-conviction court issued its findings of fact and conclusions of law denying Mosley's petition for post-conviction relief on September 3, 2014. The post-conviction court concluded,

> Trial counsel made extensive efforts to locate Winfield prior to trial. It appears from the record that counsel did locate him just days before [Mosley]'s second trial and spoke to him. Trial counsel certainly has a duty to make reasonable efforts to investigate defendant's claims, but this duty is not limitless. It is apparent from the record that Mr. Winfield was not easily accessible to either the defense or the State, even though he claims to be like family to [Mosley]. Though [Mosley]'s first trial counsel listed him as a witness, he didn't testify then either. Further, counsel had talked to him just days before the second trial and counsel was clearly anticipating that Mr. Mosley and other family members would be present for trial:
>
> "[Counsel]: And it appears that all my client's family members, alibi witnesses are not here." [R. 916].
>
> Counsel then appropriately moved for a recess for purposes of obtaining the attendance of the witnesses. The trial court denied that request. Was counsel ineffective for not using the power of the subpoena to bring in these family or as close as family witnesses? The Court cannot find that counsel's conduct in this regard falls below an objective standard of reasonableness,

especially given the short time before the trial that counsel actually located Mr. Winfield. Even if counsel's errors in this regard falls [sic] below an objective standard of reasonableness, is there a reasonable probability that the outcome of the proceeding would have been different? The Court finds that [Mosley] cannot meet the prejudice prong. The State presented eyewitness testimony identifying [Mosley] as the perpetrator. DNA evidence corroborated that eyewitness identification. In light of this evidence, the Court is unable to say that there is a reasonable probability undermining [Mosley]'s conviction that the outcome of this trial would have been different had counsel subpoenaed Winfield.

Appendix in Support of Post-Conviction Appellant Brief ("App.") at 24-26 (citation omitted).

[18] Under these circumstances, we cannot say "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. We agree Mosley has failed to meet his burden of establishing deficient performance and resulting prejudice. *See* P–C.R. 1(5); *Strickland*, 466 U.S. at 687. As to Walker and Buffy, neither testified at the post-conviction hearing, and nothing in the record indicates what their testimony would have been had they testified. *See Lee*, 694 N.E.2d at 722 ("When ineffective assistance of counsel is alleged and premised on the attorney's failure to present witnesses, it is incumbent upon the petitioner to offer evidence as to who the witnesses were and what their testimony would have been.") (citation omitted).

[19] As to Winfield, his whereabouts were unknown until a few weeks before trial. Winfield lived out-of-state, and when counsel finally located him, he seemed willing to testify. Counsel did not believe a subpoena was necessary because Winfield and Mosley "grew up together as brothers," 2011 PCR Tr. at 12, and it is unclear from the record whether counsel could have procured a subpoena enforceable in Illinois on such short notice. In addition, counsel filed a motion to continue the week before trial. The motion stated counsel required additional time to make travel arrangements for out-of-state alibi witnesses, but the trial court denied the motion. When Winfield failed to appear at trial, counsel moved for a recess or a continuance to secure his attendance, but the trial court denied the request. *See Montgomery v. State*, 804 N.E.2d 1217, 1221 (Ind. Ct. App. 2004) (concluding trial counsel's performance was deficient where counsel "fail[ed] . . . to subpoena two of the State's expert witnesses *or, in the alternative,* request a continuance when the State did not call these experts and they were unavailable for Montgomery's defense") (emphasis added), *trans. denied*.

[20] Defense counsel is not ineffective for failing to present *all* evidence in support of the defense position. *Williams v. State*, 508 N.E.2d 1264, 1268 (Ind. 1987). But even if counsel's failure to subpoena Winfield constituted deficient performance, Mosley cannot demonstrate this failure to obtain a subpoena had any effect on the judgment. *See Strickland*, 466 U.S. at 691. When Winfield testified at the post-conviction hearing, he did not explain his absence during the 1997 trial. And even supposing Winfield had received a subpoena and

testified, the victim positively identified Mosley from a photo array and then identified Mosley as her assailant at trial. The victim further testified Mosley told her he was from Chicago, would be going back to Chicago, and would therefore be "long gone" if she tried to call the police. R. at 532. Mosley was later arrested in Chicago, and the results of the rape kit corroborated the victim's testimony. Counsel aggressively challenged the identification evidence and the reliability of the DNA analysis to no avail. Given the strong evidence of guilt presented at trial, we cannot say there is a reasonable probability the result of the proceeding would have been different had Winfield received a subpoena.

[21] As Mosley has not demonstrated he was prejudiced by counsel's failure to subpoena alibi witnesses, he has failed to meet his burden of establishing grounds for relief on this claim.

## B. Trial Counsel's Failure to Request an Admonishment

[22] "[I]n order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection, he must also request an admonishment and, if the admonishment is not given or is insufficient to cure the error, then he must request a mistrial." *Lainhart v. State*, 916 N.E.2d 924, 931 (Ind. Ct. App. 2009) (quotation omitted). Mosley argues he received ineffective assistance because his trial counsel failed to request an admonishment after the State made the following comments during closing argument: "Why wasn't Mr. Mosley's alibi checked out? Because he has none. Who came into this courtroom and told you Mr. Mosley was in Chicago on

May 27th of 1992?  No one did."  Supplemental Record of Proceedings at S39.

Defense counsel promptly objected, but the trial court overruled the objection.

Counsel did not thereafter request an admonishment.

[23] The post-conviction court concluded the State was merely "comment[ing] on the strength and quality of the defense case."  App. at 26-27.  We disagree. While it is not improper in closing argument to focus on the uncontradicted nature of the State's case, the prosecutor may not suggest the defendant has the burden of proof in a criminal case by inquiring why the defendant did not call a witness to testify on his or her behalf.  *Wright v. State*, 690 N.E.2d 1098, 1112 (Ind. 1997).  Nonetheless, we conclude Mosley cannot demonstrate he was prejudiced by counsel's failure to request an admonishment.  At the conclusion of closing arguments, the trial court instructed the jury,

> The defendant has asserted the defense of alibi.  Evidence has been presented from which an inference can be drawn, that at the time of the commission of the crimes charged in the information the defendant was at a different place so remote or distant that he could not have committed the crimes.  *The State has the burden of disproving this defense beyond a reasonable doubt.*

R. 340 (emphasis added).  This final instruction cured the State's improper remarks.  *See Shaffer v. State*, 674 N.E.2d 1, 6-7 (Ind. Ct. App. 1996) (concluding although counsel did not request an admonishment or a mistrial, the trial court's instruction to the jury cured any error in the prosecutor's improper question), *trans. denied*.

Although we disagree with the post-conviction court's conclusion as to the propriety of the remarks at issue, we cannot say "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. Mosley has not demonstrated he was prejudiced by counsel's failure to request an admonishment and has therefore failed to meet his burden of establishing grounds for relief on this claim.

## C. Trial Counsel's Failure to Object to Consecutive Sentences

"When a claim of ineffective assistance of counsel is based on counsel's failure to object, the defendant must show that a proper objection would have been sustained." *Willsey v. State*, 698 N.E.2d 784, 794 (Ind. 1998). At the conclusion of the 1997 trial, the trial court sentenced Mosley to forty years for rape, twenty years for robbery, and ten years for criminal confinement, to be served consecutively for an aggregate sentence of seventy years. Mosley argues he received ineffective assistance because his trial counsel failed to object to the trial court's imposition of consecutive sentences. Mosley contends counsel should have insisted he be sentenced under a version of Indiana Code section 35-50-1-2 ("Section 35-50-1-2") effective July 1, 1994, two years after the date of his offenses.

The general rule is that "courts must sentence defendants under the statute in effect at the time the defendant committed the offense." *Jacobs v. State*, 835 N.E.2d 485, 491 n.7 (Ind. 2005) (quotation omitted). The narrow exception to this general rule is the doctrine of amelioration, which "entitles defendants who

are sentenced after the effective date of a statute providing for a more lenient sentence to be sentenced pursuant to that statute, as opposed to the statute in effect at the time the crime was committed." *Cottingham v. State*, 971 N.E.2d 82, 85 (Ind. 2012).

[27] In the present case, Mosley raped, robbed, and confined the victim on May 27, 1992. Following a jury trial in March 1994, Mosley was convicted on all counts and sentenced in May 1994. In 1996, this court reversed and remanded for a new trial. Mosley faced the same charges at his second trial in April 1997. Following the 1997 trial, the jury found Mosley guilty on all counts, and the trial court sentenced him in May 1997. Mosley contends his counsel was ineffective by failing to object to the imposition of consecutive sentences at the May 1997 sentencing hearing.

[28] At the time of Mosley's offenses, Section 35-50-1-2 provided,

> (a) Except as provided in subsection (b), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively.
>
> (b) If, after being arrested for one (1) crime, a person commits another crime:
> (1) before the date the person is discharged from probation, parole, or a term of imprisonment for the first crime; or
> (2) while the person is released:
> (A) upon the person's own recognizance; or
> (B) on bond;
> the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

Ind. Code § 35-50-1-2 (1987). This version of the statute, which granted the trial court wide discretion in determining whether sentences should be served consecutively, *Pearson v. State*, 543 N.E.2d 1141, 1144 (Ind. Ct. App. 1989), was also in effect at the time of Mosley's first sentencing hearing in May 1994.

[29]     In March 1994, the General Assembly passed Senate Enrolled Act No. 115, amending Section 35-50-1-2(a), effective July 1, 1994, to include the single episode of criminal conduct rule:

> (a) Except as provided in subsection (b), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances in IC 35–38–1–7.1(b) and IC 35–38–1–7.1(c) in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under [the habitual offender enhancements], to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind. Code § 35-50-1-2 (1994); Pub. L. No. 164-1994. Mosley believes this version of the statute—no longer in effect in 1997—should have applied at his sentencing in 1997. Mosley argues counsel should have objected to the trial

court's imposition of consecutive sentences because his convictions arose out of a single episode of criminal conduct and his aggregate sentence of seventy years exceeded the presumptive sentence for murder, a felony one class higher than the most serious felony for which he was convicted.[7]

[30] In May 1995, the General Assembly passed House Enrolled Act ("H.E.A.") No. 1336, again amending Section 35-50-1-2, effective July 1, 1995. H.E.A. No. 1336 introduced the "crime of violence" exception to the cap on consecutive sentences arising from a single episode of criminal conduct. This version of the statute provided in relevant part:

> (a) As used in this section, "crime of violence" means: . . .
> (7) rape (IC 35-42-4-1); . . .
> (10) robbery as a Class A felony or a Class B felony (IC 35-42-5-1); . . .
>
> (b) As used in this section, "episode of criminal conduct" means offenses or a connected serious of offenses that are closely related in time, place, and circumstance.
>
> (c) Except as provided in subsection (d), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances in IC 35–38–1–7.1(b) and IC 35–38–1–7.1(c) in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, *except for crimes of violence*, the total of the total of the consecutive terms of imprisonment, exclusive of

---

[7] The presumptive sentence for murder, effective July 1, 1994, was fifty years. Pub. L. No. 164-1994.

terms of imprisonment under [the habitual offender enhancements], to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted. . . .

Ind. Code § 35-50-1-2 (1995) (emphasis added); Pub. L. No. 304-1995. This version of the statute also included a savings clause, stating "IC 35-50-1-2, as amended by this act, applies to crimes committed after June 30, 1995." *Id.*

[31] In March 1996, the General Assembly passed H.E.A. No. 1148, amending Section 35-50-1-2 yet again, effective July 1, 1996. H.E.A. No. 1148 added a provision requiring consecutive sentences if a court determines, under Indiana Code section 35-50-2-11, a person used a firearm in the commission of an offense. Ind. Code § 35-50-1-2 (1996); Pub. L. No. 203-1996. This version of the statute was in effect when Mosley was sentenced in May 1997.

[32] Mosley believes the version of the statute most favorable to him should apply— that is, the version effective from July 1, 1994, to June 30, 1995. But this version of the statute was not in effect at the time of his offenses, was not in effect when he was sentenced in May 1994, and was no longer in effect when he was sentenced in 1997. In other words, the version of the statute Mosley believes should apply was not in effect at any time relevant to the disposition of his case. The post-conviction court concluded, and we agree,

Since the amendments in effect when [Mosley] was sentenced the second time were not ameliorative as applied to him, the doctrine

of amelioration does not apply and so the Court correctly sentenced him under the statute that was in effect at the time he committed the crimes. Consequently, if [Mosley]'s trial counsel had objected to his sentence on the basis of the single episode of criminal conduct rule, such an objection would have been overruled . . . .

App. at 30. As Mosley cannot demonstrate the trial court would have sustained an objection to the imposition of consecutive sentences, Mosley has failed to meet his burden of establishing grounds for relief on this claim.

## D. Appellate Counsel's Failure to Raise Meritorious Issues

Finally, Mosley contends his appellate counsel rendered ineffective assistance on direct appeal. The standard for ineffective assistance of appellate counsel is the same standard as for trial counsel. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). The petitioner must show appellate counsel was deficient in his or her performance and the deficiency resulted in prejudice. *Id.*

Mosley argues he received ineffective assistance because appellate counsel failed to raise meritorious issues "significant and obvious on the face of the record." Amended Appellant's Brief at 22. Mosley contends appellate counsel on direct appeal should have raised the following issues: (1) trial counsel's failure to subpoena alibi witnesses; (2) the trial court's failure to admonish the jury after the State's improper remarks during closing argument; and (3) the trial court's imposition of consecutive sentences.

When evaluating a claimed deficiency in appellate representation due to an omission of an issue, a post-conviction court is properly

deferential to appellate counsel's choice of issues for appeal unless such a decision was unquestionably unreasonable. Such deference is appropriate because the selection of issues for direct appeal is one of the most important strategic decisions of appellate counsel. Appellate counsel's performance, as to the selection and presentation of issues, will thus be presumed adequate unless found unquestionably unreasonable considering the information available in the trial record or otherwise known to the appellate counsel. In crafting an appeal, counsel must choose those issues which appear from the face of the record to be most availing. Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Thus, to prevail in such claim in post-conviction proceedings, it is not enough to show that appellate counsel did not raise some potential issue; instead, the defendant must show that the issue was one which a reasonable attorney would have thought availing.

*Hampton v. State*, 961 N.E.2d 480, 491-92 (Ind. 2012) (citations and internal quotation marks omitted).

[36] Applying this standard to the present case, we cannot say appellate counsel's choice of issues was "unquestionably unreasonable." *Id.* at 491. With regard to trial counsel's failure to subpoena Mosley's alibi witnesses, "some grounds supporting an assertion of inadequate representation will not be reasonably knowable, much less fully factually developed, until after direct appeal." *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind. 1998), *cert. denied*, 528 U.S. 861 (1999). Appellate counsel explained this to Mosley in a letter dated April 21, 1998, which stated in relevant part, "Any issue you may have arising from your alibi would be best raised at post-conviction, as it was not fully developed on the face

of the record." Petitioner's Exhibit E. As to the trial court's failure to admonish the jury after the State's improper remarks, the error was cured by the trial court's final instruction stating the prosecutor has the burden of disproving Mosley's alibi beyond a reasonable doubt. *Supra* Section II.B. Finally, as explained above, the trial court did not err by imposing consecutive sentences, *supra* Section II.C, so this issue is not "one which a reasonable attorney would have thought availing." *Hampton*, 961 N.E.2d at 492.

[37] As Mosley has not demonstrated appellate counsel's selection of issues for direct appeal was unquestionably unreasonable, Mosley has failed to meet his burden of establishing grounds for relief on this claim.

# Conclusion

[38] The post-conviction court did not err in denying Mosley's petition for post-conviction relief. As Mosley has not demonstrated he received ineffective assistance of trial or appellate counsel, we affirm the post-conviction court's denial of post-conviction relief.

[39] Affirmed.

Vaidik, C.J., and Pyle, J., concur.