Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 21 2014, 8:30 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**JOHN NAYLOR**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOHN NAYLOR, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )  No. 31A01-1301-PC-4 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE HARRISON SUPERIOR COURT
The Honorable Roger Davis, Judge
Cause No. 31D01-1204-PC-5

**August 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

John Naylor, *pro se*, appeals the post-conviction court's denial of his petition for post-conviction relief, raising a single issue for our review: whether the post-conviction court erred by denying Naylor's petition, which was founded on a claim of ineffective assistance of trial counsel. Concluding the denial of Naylor's petition was not erroneous, we affirm.

## Facts and Procedural History

The facts relevant to Naylor's underlying convictions have been previously recounted by this court in Naylor's direct appeal:

> On June 12, 2004, Linda Pittman was driving her van and her mother, Myrtle Satterfield, was riding as a passenger. As Linda pulled into the driveway of the residence in Mauckport she shared with her husband, Hobert Pittman, Albert Pittman, Hobert's son and Linda's stepson, began shooting at her van. Then Albert got into a Ford Explorer that belonged to Hobert and began to back up towards Linda's van. Albert stopped, and he and a passenger got out and both started shooting at Linda's van. Linda "played dead" until Albert and his passenger got back into the Explorer and drove away. Linda sustained several gunshot wounds to her face and body, and Satterfield ultimately died of her gunshot wounds.

> Linda then drove to a nearby tavern and stopped two men in a vehicle, Darrell Mosier and Matthew Stanley, and asked them for help. Mosier observed blood on Linda's face and arm, and he saw that Satterfield was "slumped over" in the backseat. Linda told Mosier and Stanley that her stepson, Albert, had shot them and that he and "a friend of his" had fled the scene in Hobert's red Ford Explorer. Just then, Linda, Mosier, and Stanley saw the Explorer driving towards them, and Linda yelled, "That's them!" Albert did not stop, but drove away. Stanley got out of Mosier's vehicle to assist Linda, and Mosier called 911 and began following Albert and the other man, later identified as Naylor, in the Explorer. Mosier eventually caught up to the Explorer after it had stopped under a bridge, and he saw Albert and Naylor removing items from the Explorer and putting them into Naylor's car, which had been parked there.

Albert and Naylor then drove away in Naylor's car, and Mosier stayed with them. At one point, Naylor pulled his car up next to Mosier's vehicle at a red stoplight, and Mosier got a good look at both men before they drove away. Mosier then drove back to the scene where he had left Stanley with Linda, and she was receiving medical attention. Mosier and Stanley gave statements to the police, who subsequently discovered Hobert's dead body at his residence. Hobert had been killed prior to the attack on Linda and Satterfield.

In the course of the ensuing investigation, police learned that Albert and Naylor had been seen together the day before the shootings and that they had gone to Florida together afterwards. Police in Daytona Beach, Florida, ultimately arrested Albert and Naylor. As Florida police brought Naylor into the police station, Detective Tammy Pera heard Naylor say that he "didn't want to talk" and that he was "facing the death penalty." Later, while in jail in Indiana, Naylor told Corrections Officer Brian Winninger, "I'm guilty of killing those two people. I need to talk to someone over the situation. I'm guilty and about to go crazy over what I've done. Can I please talk to you about it?" But while Naylor considered entering a guilty plea, he ultimately pleaded not guilty and faced a jury trial.

The State charged Naylor with felony murder (Satterfield), murder (Hobert), attempted murder (Linda), conspiracy to commit burglary, burglary, theft, auto theft, and assisting a criminal.[1] A jury found him guilty of felony murder, attempted murder, conspiracy to commit burglary, auto theft, and assisting a criminal, and the trial court entered judgment accordingly. At sentencing, the trial court found that the aggravators outweighed the mitigators and sentenced Naylor to an aggregate term of 120½ years.

Naylor v. State, No. 31A01-0704-CR-157, slip op. at 1-2 (Ind. Ct. App. 2008). In his direct appeal, Naylor raised the following issues: (1) whether the trial court abused its discretion when it found him competent to stand trial and sentencing; (2) whether the trial court abused its discretion when it admitted into evidence statements Naylor made to police officers; (3) whether the trial court abused its discretion when it admitted into evidence

---

[1] Police found that several items had been stolen from the Pittmans' home, including weapons used in the shootings and Hobert's Ford Explorer.

certain photographs; (4) whether the State presented sufficient evidence to support his convictions; and (5) whether the trial court abused its discretion when it sentenced him. This court affirmed in all respects. Id. Our supreme court denied Naylor's petition to transfer on March 13, 2008.

On April 9, 2012, Naylor filed his petition for post-conviction relief, alleging ineffective assistance of trial counsel. A hearing was held on Naylor's petition on September 25, 2012. Witnesses at the hearing included Stanley Robison (Naylor's trial counsel), Donna Smallwood (Robison's legal aid), Naylor, and three of Naylor's family members. The post-conviction court denied Naylor's petition on December 14, 2012. This appeal followed.

Discussion and Decision

I. Standard of Review

A petitioner seeking post-conviction relief bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who is denied post-conviction relief appeals from a negative judgment, which may be reversed only if "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." Stevens v. State, 770 N.E.2d 739, 745 (Ind. 2002), cert. denied, 540 U.S. 830 (2003). We defer to the post-conviction court's factual findings, unless they are clearly erroneous. Id. at 746.

The Sixth Amendment's "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To establish a claim of ineffective assistance

of counsel, a convicted defendant must show (1) that counsel's performance was deficient such that it fell below an objective standard of reasonableness based on prevailing professional norms and (2) the defendant was prejudiced by counsel's deficient performance. Id. at 687. When considering whether counsel's performance was deficient, the reviewing court begins with a "strong presumption" that counsel's performance was reasonable. Id. at 689. A defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The two prongs of the Strickland test—performance and prejudice—are independent inquiries, and both prongs need not be addressed if the defendant makes an insufficient showing as to one of them. Id. at 697. For instance, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed" without consideration of whether counsel's performance was deficient. Id.

## II. Ineffective Assistance of Trial Counsel

On appeal, Naylor claims the post-conviction court erred in denying his petition, and he complains of what we identify as three instances of alleged ineffective assistance of counsel: (1) Robison's failure to inform Naylor regarding his right to testify at trial and his refusal to allow Naylor the opportunity to testify; (2) Robison's failure to challenge the admission of confessions made by Naylor; and (3) Robison's failure to adequately investigate or prepare for trial. We will address each of these allegations in turn.

## A. Naylor's Right to Testify

Naylor's primary argument throughout these post-conviction proceedings has been that Robison performed deficiently by effectively denying Naylor his right to testify in his own defense. In Naylor's words, "Robison refused to allow [Naylor] the right to testify and if he tried, Robison would 'shout him down.'" Brief of Petitioner-Appellant at 2. The post-conviction court, however, viewed the evidence quite differently, concluding that Naylor's decision not to testify was made by Naylor upon consultation with Robison. The evidence supports the post-conviction court's conclusion. Robison testified that he "discussed with [Naylor] his right to testify no less than four times. . . . We discussed it before trial and during trial. He agreed with it every time, not to testify." Transcript at 49.

"The post-conviction court is the sole judge of the evidence and the credibility of the witnesses." Hall v. State, 849 N.E.2d 466, 468-69 (Ind. 2006). The post-conviction court determined that Naylor chose freely to forgo testifying after receiving the advice of counsel. The court's decision to credit Robison's version of events over Naylor's is a straightforward credibility determination by the post-conviction court, and it is one that Naylor has failed to demonstrate is clearly erroneous.

## B. Challenge to Naylor's Confessions

Next, Naylor contends Robison failed to challenge the admission of statements made by Naylor confessing to the charges against him. The post-conviction court found, and we agree, that Naylor's allegations on this point are entirely groundless. The confessions Naylor complains of were addressed in his direct appeal, and this court specifically noted that Robison made a contemporaneous objection at trial prior to

6

admission of that evidence. <u>Naylor</u>, slip op. at 6. Moreover, entries in the Chronological Case Summary reflect unsuccessful attempts by Robison to have these statements suppressed prior to trial. <u>See</u> Appendix of Appellant's Brief at 20. Naylor's assertion that Robison did not challenge the admission of this evidence is demonstrably false, and thus we find no error in the post-conviction court's rejection of Naylor's argument on this issue.

### C. Trial Counsel's Preparation and Trial Strategy

Last, Naylor asserts that Robison neglected to prepare for trial or present any defense at trial. Specifically, Naylor states that an illness suffered by Robison hindered his ability to adequately represent Naylor. Contrary to these assertions, the post-conviction court found there was "a lack of any credible evidence to support any of these claims" and that "Robison is a skilled trial attorney with [29 years] of criminal . . . experience." Appellant's App. at 79. The evidence presented at Naylor's hearing demonstrates that Robison, among other things, filed a number of pre-trial motions to suppress or otherwise exclude incriminating evidence, engaged in plea negotiations, participated in extensive discovery, conducted depositions, and met with his client on numerous occasions. Robison also testified that he turned away other prospective clients to make time for his representation of Naylor.

With respect to trial strategy, we note that "[c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>State v. Holmes</u>, 728 N.E.2d 164, 172 (Ind. 2000) (citation omitted), <u>cert. denied</u>, 532 U.S. 1067

(2001). The post-conviction court found Naylor's claim that Robison did "not present[] or prepar[e] any kind of defense," Appellant's Br. at 4, to be unsupported by the evidence. In addition to the preparation mentioned above, Robison went to trial prepared to make objections and thoroughly cross-examine the State's witnesses. Naylor has failed to demonstrate—either before the post-conviction court or on appeal—that any trial strategy employed by Robison amounted to deficient performance.

Conclusion

Concluding the post-conviction court did not err by denying Naylor's petition for post-conviction relief, we affirm.

Affirmed.

BAKER, J., and KIRSCH, J., concur.