# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 24 2017, 9:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

John Pinnow
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy
Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth R. Cronin, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | July 24, 2017 <br><br> Court of Appeals Case No. <br> 62A01-1703-PC-624 <br><br> Appeal from the Perry Circuit Court <br><br> The Honorable M. Lucy Goffinet, Judge. <br><br> The Honorable Karen A. Werner, Magistrate. <br><br> Trial Court Cause No. <br> 62C01-1105-PC-299 |

**Bradford, Judge.**

# Case Summary

[1]     On April 24, 2008, Cronin was charged in a twenty-count charging information with dealing in methamphetamine and various related offenses. On April 28, 2008, Cronin was charged with two additional counts of being a serious violent felon in possession of a firearm. Following a bifurcated trial in March of 2009, Cronin was found guilty as charged on all twenty-two counts. On April 7, 2009, the trial court imposed a forty-five-year sentence for counts 1-20 and count 22, and a consecutive fifteen-year sentence for count 21, resulting in a total sentence of sixty years.

[2]     This court affirmed Cronin's convictions on direct appeal. Cronin filed a petition for post-conviction relief ("PCR") on Mary 13, 2011, and an amended post-conviction petition on April 11, 2015. The post-conviction court summarily denied relief in October of 2015, but this Court remanded to the post-conviction court with instructions. On October 11, 2016, the post-conviction court held an evidentiary hearing. On March 17, 2017, the post-conviction court issued written findings of fact and conclusions of law denying Cronin's PCR petition. Because Cronin has failed to meet his burden of showing that he received ineffective assistance of trial and appellate counsel, and his due process claim is barred by *res judicata*, we affirm.

# Facts and Procedural History

[3]     The facts as they were found by this court on direct appeal are as follows:

On April 2, 2008, Tell City Police Officer Marty Haughee conducted a probation search at the home of Derrick Stiles. The search produced evidence of drug activity in his basement; specifically, police found paraphernalia used to manufacture methamphetamine ("meth"). In an attempt to better his legal situation and avoid probation revocation, Stiles agreed to provide police with information regarding the manufacture of meth in the area; this included information about Cronin's drug activity. Based on this information, police obtained warrants to search two of Cronin's properties.

On April 18, 2008, state and local law enforcement officers, accompanied by two federal Alcohol, Tobacco, Firearms and Explosives ("ATF") agents, simultaneously executed the warrants upon both of Cronin's properties. Cronin was mowing the lawn of the Aster Road property when the police arrived to conduct the search there. In the living room, police discovered a metal cylinder containing meth, a glass pipe, marijuana, aluminum foil containing burnt residue, a loaded .380 caliber semi-automatic weapon, a loaded .32 caliber handgun, and additional ammunition. In the kitchen, they found coffee filters containing meth residue. In the bedroom, they found burnt marijuana joints, rolling papers, Cronin's casino rewards card, and mail addressed to Cronin and his wife at the address of his other searched property on Highwater Road. Under the mattress, police found a loaded short-barrel twelve-gauge shotgun. In a closet, they found a digital scale, a plastic bag of cutting agent, two shotguns, two .22 caliber rifles, shotgun shells, and other ammunition. In the garage, they discovered coffee filters, battery stoppings, a package of lithium batteries, empty boxes of medications containing ephedrine or pseudoephedrine, an empty bottle of Coleman camp fuel, an empty bottle of Heat [sic], an empty can of starter fluid, a glass bottle containing a chunky white substance, a plastic spoon containing white residue, a plastic soda bottle with a modified lid and tubing attached to create an HCL generator, additional plastic tubing,

8.76 grams of meth, and propane tanks containing anhydrous ammonia. Police arrested Cronin and discovered $9,413.00 on his person.

In their simultaneous search of the Highwater Road property, police found Cronin's truck to contain a metal cylinder housing plastic bags containing 8.96 and 4.27 grams of meth and a plastic bag containing .97 grams of cocaine. They also discovered a box of plastic sandwich bags on the floor board. In the bedroom, police discovered receipts for the purchase of meth precursor items, a butane torch, a water bottle containing a secret compartment, a glass pipe containing residue, a marijuana "blunt,".10 grams of meth on the dresser, .36 grams of meth in a metal tin, and a bank statement and prescription pill bottle in Cronin's name at that address. Under the bed, they found a loaded .45 caliber handgun and ammunition. The garage contained a plethora of items, including a loaded Glock handgun with two extra magazines, additional ammunition of various calibers, a coffee grinder, a coffee filter containing 13.38 grams of meth, additional coffee filters, radio frequency detectors, two night vision scopes, containers of salt, pills containing pseudoephedrine, liquid fire, propane torches, an air purifying respirator, a prescription pill bottle bearing Cronin's name and containing marijuana, a glass pipe with residue, rolling papers, and a false dictionary with a hidden compartment containing meth, marijuana, a hollow pen, and a check card book containing Cronin's name. In the rafters, police found another plastic bag containing meth.

On April 24, 2008, the State charged Cronin with the following twenty counts: four counts of class A felony dealing methamphetamine, four counts of class C felony methamphetamine possession, two counts of class C felony possession of anhydrous ammonia, two counts of class C felony possession of meth precursors, two counts of class D felony maintaining a common nuisance, two counts of class A

misdemeanor marijuana possession, two counts of class A misdemeanor possession of paraphernalia, and two counts of class A misdemeanor illegal storage of anhydrous ammonia. On April 28, 2008, the State amended the information to include two counts of class B felony unlawful possession of a firearm by a serious violent felon.

On August 27, 2008 and January 22, 2009, Cronin filed motions to suppress the evidence produced from the searches on the basis that the search warrants were not supported by probable cause. The trial court denied both motions following hearings. On February 27, 2009, the State filed a motion in limine seeking to limit testimony by federal ATF agents involved in the investigation. In response, Cronin filed a motion for continuing objection to the evidence discovered pursuant to the search warrants, which the court granted on March 3, 2009. A five-day jury trial commenced that same day. On March 4, 2009, Cronin moved for a mistrial based on the trial court's enforcement of the federal ATF agents' testimonial privilege. The trial court denied his motion on March 5, 2009. On March 9, 2009, the jury found Cronin guilty as charged on counts one through twenty. After a bifurcated phase of the trial, the jury found him guilty of two counts of unlawful possession of a firearm by a serious violent felon. On April 7, 2009, the trial court sentenced him to an aggregate term of sixty years.

*Cronin v. State*, No. 62A01-0904-CR-186, slip op. 1-2 (Ind. Ct. App. January 25, 2010).

[4] Cronin was represented by attorney Michael McDaniel both at his trial and in his subsequent direct appeal. On direct appeal, Cronin claimed that the trial court erroneously denied the mistrial motion because of the denial of his constitutional rights. This court held that the trial court properly denied the

motion. This court also held that the search warrants were supported by probable cause and that the jury was properly instructed.

[5] Cronin subsequently filed a PCR petition raising three claims: 1) Cronin's trial counsel was ineffective for not knowing and following the applicable federal law to obtain authorization for the ATF agents to testify regarding the trace history of other firearms; 2) Cronin's appellate counsel was ineffective for not arguing that his aggregate sixty-year sentence exceeded the maximum allowed on the basis that this was a single episode of criminal conduct; and 3) Cronin was denied his rights to present a defense and cross-examine witnesses because the ATF agents' testimony was limited. During the post-conviction hearing, Cronin presented evidence that in 2013 and 2015 he sent the appropriate requests to the Department of Justice requesting the trace history results from the other firearms and both times the requests were denied because the ATF has been prohibited by statute from disclosing such information since 2003. The post-conviction court denied Cronin's petition on March 17, 2017.

# Discussion and Decision

## I. Standard of Review

[6] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from a denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads

unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id*.

## II. Ineffective Assistance of Trial Counsel

[7] Post-conviction proceedings do not afford a petitioner with a super-appeal, and not all issues are available. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001). A claim of ineffective assistance of trial counsel is properly presented in a post-conviction proceeding if such claim is not raised on direct appeal. *Id*. A claim of ineffective assistance of counsel is an appropriate issue for post-conviction review. *Id*.

[8] "The right to effective counsel is rooted in the Sixth Amendment of the United States Constitution." *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). We evaluate such claims under the two-part test announced in

*Strickland*. *Wheeler v. State*, 15 N.E.3d 1126, 1129 (Ind. Ct. App. 2014). A successful claim for ineffective assistance of counsel must satisfy two elements:

> First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). When considering the first prong of the *Strickland* test, deficient performance, the question is not whether the attorney could—or even should—have done something more. Rather, the question is whether the attorney's performance amounted to a reasonably competent defense or did not. As a result, the inquiry must focus on what the attorney actually did, and "[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). Moreover, because "[c]ounsel is afforded considerable discretion in choosing strategy and tactics, . . . [a] strong presumption arises that counsel rendered adequate assistance." *Id*.

*Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). "The failure to establish either prong will cause the claim to fail." *Vermilion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

[9]     Cronin argues that his trial counsel was ineffective for failing to follow the procedures in 28 C.F.R. Sections 16.22-16.28. Specifically, Cronin argues that

his trial counsel should have requested that the U.S. Attorney broaden the authorization of the ATF agents to testify about the gun-trace history and the investigation regarding all of the firearms seized. Cronin, however, admitted in his own brief that the ATF agents' testimony regarding the trace evidence was limited by federal law. *See* Appellant's Br. p. 31. That is, ATF has been prohibited by statute from providing this information since 2003. *See* 28 C.F.R. §§ 16.22-16.28. Therefore, any efforts to get authorization to expand the scope of their testimony would have been futile. Moreover, Cronin has not shown how the proposed testimony would have meaningfully furthered his defense or changed the outcome of the case. The record reveals extensive evidence that Cronin owned the two residences where the guns and drugs were found. Cronin has failed to meet his burden of showing he received ineffective assistance of trial counsel.

## III. Ineffective Assistance of Appellate Counsel

Cronin contends that his appellate counsel was ineffective for failing to raise a "single episode of criminal conduct" challenge to his sentence on direct appeal. The standard of review for a claim of ineffective assistance of appellate counsel is the same for trial counsel. *Allen v. State*, 749 N.E.2d 1158, 1166 (Ind. 2001).

> Therefore, [t]o prevail on an ineffective assistance of counsel claim, [the petitioner] must show both deficient performance and resulting prejudice. As for the first prong-counsel's performance-we presume that counsel provided adequate representation. Accordingly, [c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. The second prong-the prejudicial effect of counsel's

conduct-requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id*. at 166-67 (citations and quotations omitted).

[11] Indiana courts recognize three basic categories of alleged appellate counsel ineffectiveness: 1) denying access to an appeal; 2) failing to raise an issue on appeal; and 3) failing to present an issue completely and effectively. *Bieghler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997). Ineffectiveness is rarely found when the issue is failure to raise a claim on direct appeal. *Id*. at 193. "One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Id*. (internal citation omitted). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). "Accordingly, when assessing these types of ineffectiveness claims, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable." *Bieghler*, 690 N.E2d at 194.

[12] The post-conviction court concluded that

34. In paragraph 9(B)(1), Cronin alleges he was denied the effective assistance of appellate counsel for not arguing on appeal regarding the cap on consecutive sentences under I.C. 35-50-1-2(c).

35. An episode of criminal conduct means offenses or a connected series of offenses that are closely related in time, place, and circumstance. I.C. 35-50-2-1(b).

36. Whether the charged offenses constitute a single episode of criminal conduct, the focus is on the timing of the offenses and the simultaneous and contemporaneous nature, if any, of the crimes. *Reed v. State*, 856 N.E.2d 1189 (Ind. 2006).

37. Cronin operated two separate, independent and distinct criminal enterprises at two different locations several miles apart. The crimes committed at Cronin's Highwater Road property and Aster Road property were not closely related in time, place and circumstance.

[13] Cronin argues that his sentence violates the single episode limitation on consecutive sentences. To constitute a single episode, the offenses must occur simultaneously or contemporaneously. *See Reed*, 856 N.E.2d at 1200. "Where each crime takes place at separate times and at separate places, they do not constitute a single episode of criminal conduct." *Hope v. State*, 834 N.E.2d 713, 716 (Ind. Ct. App. 2005).

[14] Cronin's claim that his offenses constitute a single episode is based upon the facts that the State used the same chemist to test the drugs recovered from both locations, the charging information used similar language for the offenses at both locations, and the search warrants for the two locations were executed simultaneously. Cronin cites to no authority, and we are aware of none,

suggesting that having these types of similarities or overlap within two investigations somehow establishes a single episode of criminal conduct. Consequently, Cronin has failed to meet his burden of proving that he received ineffective assistance of appellate counsel.

# IV.  *Res Judicata*

Cronin also raises a freestanding claim that he was denied his due process right to present a defense because of the limitations on the ATF agents' testimony. "Post-conviction proceedings do not afford criminal defendants the opportunity for a 'super-appeal.'  Rather, post-conviction proceedings provide defendants the opportunity to raise issues that were not known at the time of the original trial or that were not available on direct appeal." *State v. Holmes*, 728 N.E.2d 164, 167 (Ind. 2000).  Consequently, when

> this Court decides an issue on direct appeal, the doctrine of res judicata applies, thereby precluding its review in post-conviction proceedings.  The doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute.  A petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error.

*Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000).

Despite his attempts to repackage the issue, Cronin concedes that "the claim was presented on direct appeal and resolved against" him.  Appellant's Br. p. 30.  Because this issue has already been litigated once, Cronin is precluded from litigating it a second time in post-conviction proceedings.

# Conclusion

[17] The post-conviction court properly rejected Cronin's claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. We also conclude that Cronin's due process claim is barred by *res judicata* because it was already litigated on direct appeal. The judgment of the post-conviction court is affirmed.

Najam, J., and Riley, J., concur.